**Elmore V. SCHUELER, as Chairman of the Board of Teamsters, Local 445, Construction Division Health and Welfare Fund, Local 445 Construction Division Pension Fund, and Local 445 Construction Division Annuity Fund, Plaintiffs,**

v.

**RAYJAS ENTERPRISES, INC., Defendant.**

**No. 93 Civ. 6979 (VLB).**

United States District Court, S.D. New York.

April 4, 1994.

---

Elizabeth Cowit, Law Offices of Donald L. Sapir, White Plains, NY, for plaintiffs.

Rayjas Enterprises, Inc., pro se.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

Plaintiffs are seeking a default judgment in this case brought under the Employee Retirement Income Security Act, 29 U.S.C. §§ 1132, 1145, involving nonpayment of contributions allegedly due to employee benefit funds pursuant to a collective bargaining agreement. Jurisdiction over this case arises under 28 U.S.C. § 1331.

▮ Plaintiffs appear to be entitled to a default judgment, defendant not having answered or otherwise moved with respect to the complaint served on October 20, 1993, but the amount of attorney's fees sought exceeds the principal amount in dispute although no active litigation apart from settlement negotiations appears to have taken place.

For the reasons indicated in *Schueler v. Roman Asphalt Corp.*, 827 F.Supp. 247, 253–58 (S.D.N.Y.1993), this amount is difficult to justify. The relevance of the Government's analysis of the bill which later became the Federal Debt Collection Procedures Act of 1990 (the "Act"), 28 U.S.C. § 3001 *et seq.*, in regard to creditors' attorney's fees appears to have been overlooked.

While not directly binding, the Act is persuasive as the most recent Congressional declaration of an approach to debt collection viewed as appropriate. The most relevant section of the Act is 28 U.S.C. § 3011, which establishes a flat 10% (ten per cent) creditor's attorney fee as a backup or default option where other amounts are not fixed by statute. The Government's Section-by-Section Analysis of S 1961, 100th Cong., 2d Sess (1987) states in regard to initial legislation similar to the final enactment of 28 U.S.C. § 3011:

> This section provides that the United States may recover a designated percentage of the debt ... no defendant will be penalized for contesting a claim by incurring additional costs, thus exerting a chilling effect on the exercise of the defendant's constitutional right to a day in court.

That statement in its entirety is attached to this memorandum order as Appendix A, including editorial material explaining the chronology of this document and cross-references to the relevant provisions of the statute as passed by Congress.

This matter is referred to United States Magistrate Judge Mark D. Fox for a Report

and Recommendation concerning the amounts due for the underlying debts and reasonable attorney's fees under 29 U.S.C. § 1132(g) and the principles set forth in *Schueler v. Roman Asphalt,* 827 F.Supp. 247 (S.D.N.Y.1993).

**SO ORDERED.**

## APPENDIX A

The editorial material which follows is reprinted from *Manual of Federal Practice,* by permission of Shepard's/McGraw–Hill, Inc., copyright by Shepard's/McGraw–Hill, Inc. Further reproduction of any kind is strictly prohibited. For subscription information, please contact Shepard's/McGraw–Hill, Inc., 555 Middle Creek Parkway, Colorado Springs, Colorado 80921; 1–800–525–2474.

The text of the Government's statement itself is of course in the public domain and therefore not editorial material.

**Government's Statement and Section-by-Section Analysis Concerning Senate Hearings on S 1961, 100th Cong, 2d Sess (1988)**

The following Appendix consists of the Government's Statement including section-by-section analysis concerning S 1961, 100th Cong, 2d Sess (1987), submitted to the Senate Judiciary Committee and referred to in The Federal Debt Collection Procedures Act of 1988, Senate Judiciary Committee, *Hearing before the Subcommittee on Courts and Administrative Practice,* on S 1961, S Hrg 100–1047, 100th Cong, 2d Sess 196, 199 (1988). It is presented in the form of proposed committee report language which was not acted upon by the Committee which reported the bill favorably without a written report.

The amended S 1961 reflecting changes explained in the Government's Statement served as the basis for S 84, 101st Cong, 1st Sess (1989), also reported favorably without a written report. S 1961 was passed by the Senate on October 14, 1988 and S 84 on November 3, 1989. S 84 was revised in HR 5640, and enacted in further revised form in 1990 as explained in § 12.1. HR 5640 is discussed in HR Rep No 736, 101st Cong, 2d Sess, *reprinted in* 1990 US Code Cong & Admin News 6630, and in Representative Brooks' floor statement, 136 Cong Rec

H13288 (daily ed Oct 27, 1990). Many aspects of the final provisions are discussed only in the statement set forth below. Others were changed substantially as reflected in HR Rep No 736 or H13288.

Sections of Title 28 as added in 28 USC ch 176 comparable to those referred to in the Government's Statement concerning various sections of S 1961 are cited in [*bracketed italics* ]; in most instances the 28 USC provisions are related to but not identical to those contained in S 1961 as amended and passed by the Senate on October 14, 1988.

■

## I. STATEMENT

At the present time, there are over $32 billion dollars of outstanding non-tax delinquent debts due the United States. With the inclusion of unpaid taxes, penalties and interest, the amount of these delinquent debts approaches $88 billion. In the present era of large budget deficits and resulting difficult budget choices, any improvement in the government's ability to collect these sums is not only appropriate, but overdue.

The present law governing collection of Federal debts is hamstrung by a multitude of inadequate, non-existent or conflicting state statutes. This diverse collection of laws impedes the efficient and effective collection of debts. Without this statute, the present situation can only be expected to worsen.

Moreover, the present system for collection of Federal debts is inherently unfair. This proposed legislation aims to correct the inequities that exist for Federal debtors, the Federal government and the American taxpayer. The proposal creates a firm but fair comprehensive statutory scheme for the collection of all Federal debts. Every provision in the Act is based upon existing law of some state.

Federal loans are made under uniform Federal standards, Federal taxes are imposed under a uniform Federal tax code and civil penalties and criminal fines are imposed under Federal laws and regulations. However, pursuant to the Federal Rules of Civil Procedure, after a civil money judgment is rendered or a Federal criminal fine imposed, the United States must look to the law of the state where a debtor resides to determine

what collection remedies are available to collect the debts owed to the Federal government.

There is inherent unfairness in a system which requires borrowers to compete for monies under uniform Federal requirements, but leaves some more and others less obligated to pay those debts based upon the law of the state in which they choose to locate. The same is true of those who are fined by the government, with the success of collection efforts then depending upon the laws of the state where the debtor is located. Some states have strong collection remedies, while others are havens for debtors. Those who reside in states that have strong debt collection statutes bear a disproportionate amount of the burden.

The United States must treat all its citizens equally; whether it be the student who needs money for school, an entrepreneur who cannot get a loan for his business from a bank or a veteran who wants to buy a home. Proposed in the Federal Debt Collection Procedures Act is a system whereby those who benefit from the Federal largess are required to pay back their obligations under a uniform Federal system.

The Federal Debt Collection Procedures Act will provide the necessary legal enforcement tools to assist the Federal government in its effort to recover the dramatically increasing number of debts owed to it.

This legislation does not interfere with the state law remedies in any way and does not affect the procedures in state courts. The focus of this legislation is the debtor-creditor relationship between the United States and the debtors who owe it money. The Federal Debt Collection Procedures Act merely creates a Federal procedural system so that the Federal government can better coordinate its debt management effort.

Currently, state law determines the remedies to be used in the collection of Federal debts merely because Federal Rules of Civil Procedure 64 and 69 adopt it.[1]

Every remedy set forth in this legislation exists in a similar form in one or more existing state statutes. These state provisions, upon which those in the Act are modeled, have withstood challenge in the courts. Careful consideration was given by the drafters to assure that the Act affords Federal debtors full due process protection.

The substitution of Federal procedural remedies for those remedies that exist in state statutes does not affect the applicability of state law theories of liability. State law will continue to govern, for example, as to treatment of property held by co-tenants, a corporation's liability for debts of a shareholder under the alter ego doctrine and a partner's liability for debts of the partnership.

It is entirely appropriate for the Congress to create a Federal scheme for the collection of debts owed the United States. Under Article III, Sections 1 and 2 of the United States Constitution, Congress has the exclusive power to legislate regarding the forms of action and writs to be used in the courts of the United States.[2]

In *Fink v. O'Neil*, this power of Congress was discussed in the context of legislation with a provision similar to Rule 69 of the Federal Rules of Civil Procedure and the Judiciary Act of 1789. Provisions of this Act which established a means of recovery of debts owed to the United States were found to come within the spending power of Congress set out in Article I, Section 8, Clause 1, of the United States Constitution.

Since 1979, the General Accounting Office has reported that state law impediments are among the problems which hamper Federal debt collection litigation and enforcement.[3]

In January 1981, the Office of Management and Budget made a government-wide review to identify debt collection problems

---

1. See *Custer v. McCutcheon,* 283 U.S. 514 (1931).

2. See, *e.g., Riggs v. Johnson Col.* 73 U.S. 166 (1867); *Finks v. O'Neil,* 106 U.S. 272 (1882); and *Lamaster v. Keeler,* 123 U.S. 376 (1887).

3. *Department of Justice Should Coordinate Criminal and Civil Remedies to Effectively Pursue Fraud in Federal Programs* (GCD–80–7, Oct. 25, 1979).

facing the Federal government. The report was highly critical of the Department of Justice's debt collection litigation efforts.[4] In subsequent General Accounting Office reports issued in 1985, 1986 and 1988, the problem of the impediments of state law was again identified.[5]

At the front end of the credit cycle, the absence of a Federal debt collection procedural statute means that the Federal government does not know in advance what judicial remedies will be available in the event of a default by a Federal borrower. To assure certainty, private sector lenders often stipulate what law will apply in the event of a default by the borrower. The Federal government should not have to deal with its borrowers in such a fashion. Without this proposal, a defaulting borrower can, in large measure, control the government's ability to collect by changing his location.

The enactment of the Federal Debt Collection Procedures Act would allow for more meaningful lending policies to be developed. Federal agencies could be required to create uniform loan documents which would facilitate the handling of delinquent accounts.

At the back end of the credit cycle, a uniform procedure will further enhance the Federal government's ability to collect. For the first time, maximally effective legal training of Federal debt collection attorney and non-attorney personnel could be achieved. Debt collection work is, to a large extent, non-attorney, labor-intensive. Effective training of debt collection agents is critical.

The breadth of types of claims that Federal debt collectors are called upon to enforce is as wide as the lending and enforcement responsibilities of the Federal agencies. There is a misconception that Federal debt collection consists primarily of collection of student loans. This is hardly the case. In fact, the United States Attorneys are responsible for collecting from defaulters who have received loans from any of the credit agencies. Federal attorneys collect on multi-million dollar claims for rural electrical cooperatives and multi-family housing complexes. They prosecute and collect against defense contractors and doctors who deal fraudulently with the Federal government. They protect the well being of our citizens and the land by enforcing safety penalties and environmental fines. They ensure the integrity of our Federal tax system by prosecuting and collecting from tax evaders.

The ability to collect Federal debts makes a palpable impact on the daily lives in our communities. Pursuant to the Victims of Crime Act of 1984, Federal collection efforts have been infusing millions of dollars into state and local victim and witness assistance programs. Over 95 percent of the criminal fine money collected from Federal defendants is turned over to the states for this purpose.

The Federal Debt Collection Procedures Act will provide the necessary legal enforcement tools to assist the Federal government in its effort to recover the increasing number of debts owed to it. Uniform procedures are needed if we are to recover the billions of dollars owed to the United States.

## SECTION–BY–SECTION ANALYSIS

### Title I—FEDERAL DEBT COLLECTION PROCEDURES ACT OF 1987

[see 28 USC ch 176 ]

### SUBCHAPTER A—DEFINITIONS AND GENERAL PROVISIONS

Section 3001 [see 28 USC § 3002 ]. Definitions

---

**4.** *Report on Strengthening Federal Credit Management,* Office of Management and Budget, Jan 1981.

**5.** *After the Criminal Fine Enforcement Act of 1984 Some Issues Still Need to Be Resolved* (GAO/ GGD–86–02, Oct. 10, 1985); and *Financial Integrity: Justice Made Progress But Further Improvements Needed* (GAO/GGD–86–9, Oct 31, 1985); *Justice Department: Improved Management Processes Would Balance Justice's Operations* (GAO/GGD–86–12), (Mar 14, 1986); *Justice Department: Impediments Faced in Litigating and Collecting Debts Owed the Government* (GAO/ GGD–87–7BR, Oct 15, 1986); *Justice Department: Impediments Faced in Litigating and Collecting Debts Owed the Government* (GAO/GGD– 87–7BR, Oct 15, 1986); *Justice Department Litigation and Collection of Civil Fines and Penalties* (GAO/GGD–88–23FS, Jan 1988).

This section sets forth the definitions which govern the construction of the Act.

(a) "Claim" is defined broadly in order to cover all situations in which monies are owed to the United States, however remote or contingent. This term is meant to be interpreted broadly. *See, e.g.,* 11 U.S.C. § 101(4) (1982). It should be noted that criminal and tax judgments are brought within the purview of the Act.

(b) "Counsel for the United States" is defined to cover all governmental officials litigating on behalf of the United States for the collection of money. See 28 U.S.C. §§ 516–19, 541–43 and 547. It includes private counsel who bring suit on behalf of the United States in Federal court pursuant to 31 U.S.C. § 3718 and who will conduct debt litigation pursuant to the Act. Private counsel will be subject to restraints on authority as promulgated in regulations by the Attorney General, by contract language and by other sources as appropriate.

(c) "Court" is defined as any court created by the Congress exclusive of the United States Tax Court. See 28 U.S.C. § 451. State courts are excluded by implication as the Act is not intended to affect their procedures.

(d) "Debt" is defined as liability to the United States on a claim. See 11 U.S.C. § 101(11), from which this definition is derived.

(e) "Debtor" is defined as any person who is liable to the United States on a claim.

(f) "Debt collection personnel" is defined as debt collection paralegals and support personnel employed by the United States, in addition to attorneys, whose primary duties include collection of money owed the United States. Private counsel personnel are not included. See, *e.g.,* 28 U.S.C. §§ 549 and 550 which establish the authority for the employment of such personnel in United States Attorneys' offices.

(g) "Disposable earnings" is defined as the amount of earnings left after all deductions required by law. The term "deductions required by law" includes alimony and support payments and similar items to the extent actually required by state or Federal law whether or not pursuant to court order, whether actually and necessarily paid by the obligor or deducted at the source in the case of an employee. This term is modeled on the definition contained in the Federal Consumer Credit Protection Act of 1968 at 15 U.S.C. § 1672(b) and garnishment is limited to twenty-five percent of those earnings.

(h) "Earnings" is defined as compensation paid or payable for personal services, whether denominated as wages, salary, overtime, commission, bonus or otherwise, and includes periodic payments pursuant to a pension or retirement program. This definition is also modeled after the definition in the Federal Consumer Credit Protection Act at 15 U.S.C. § 1672(b).

(i) "Garnishee" is defined as any person other than the debtor against whom a garnishment has been issued who has or is thought to have possession, custody or control of any property of the debtor. This includes obligations owed to the debtor that are past due or have yet to be incurred (such as future wages). *See* Va.Code Ann. § 8.01–511 (1985); and 2A *Michie's Jurisprudence of Virginia and West Virginia* §§ 87, 94–102 [Ed.1980 and Supp.1987].

(j) "Judgment" is defined as a judgment, order or decree entered in favor of the United States in any court. This definition narrows the one found in Rule 54(a) of the Federal Rules of Civil Procedure by excluding from its ambit any judgment, order or decree entered in favor of a party other than the United States. The term includes criminal and tax judgments and brings them within the purview of the Act.

(k) "Judgment creditor" is defined as the United States where applicable.

(*l*) "Judgment debtor" is defined as a person against whom the United States holds a judgment.

(m) "Person" is defined broadly to cover natural persons, corporations, partnerships, unincorporated associations, trusts or estates or other entities, public or private, including local governments. Individual Indians and

Indian tribes are included because they and the United States have special relationships; in addition, this will clarify that the court has the jurisdiction over cases involving them which may arise under this Act. See *Squire v. Capoeman*, 351 U.S. 1 (1956).

(n) "Prejudgment remedy" lists the specific remedies which can be sought prior to judgment.

(*o*) "Property" is defined as any present or future interest in real, personal or mixed property, whether legal or equitable, tangible or intangible, vested or contingent wherever located and however held. All forms of property are intended to be brought under the purview of the Act, except certain Indian property which is held in trust by the United States for Indians and is not subject to alienation or encumbrance. See General Allotment Act of 1887, 25 U.S.C. § 354. The term "property" is to be interpreted broadly to accomplish the purposes of the Act; this is especially important for cases in which there have been fraudulent transfers or other fraudulent activities by the debtor. See generally 11 U.S.C. § 541.

(p) "Service" shall be in accordance with the various provisions of the Federal Rules of Civil Procedure governing service of pleadings, motions, subpoenas, writs and other requests for relief. It may be nationwide in extent under section 3003 notwithstanding otherwise applicable territorial limits of effective service under Rule 4 of the Federal Rules of Civil Procedure. Service by mail under Rule 4 is contemplated and will facilitate the litigative process and the enforced collection of debts owed to the United States. Emphasis on the use of service by mail will reduce the demands on the United States marshals' limited resources. Their resources will thus be used where required for service at the critical stages of the collection process, *e.g.,* debtor examinations, subpoenas, and writs. It is also contemplated that service by mail will reduce the costs of litigation which are ultimately paid by the debtor.

(q) "State" is defined as the several states, the District of Columbia, the Common-

wealths of Puerto Rico and the Northern Marianas and any of the territories and possessions of the United States. For a similar provision, see Pub.L. 96–221, § 527, 12 U.S.C. § 86a.

(r) "United States" is defined to include any officer or agency of the United States, Federal corporation, Federal instrumentality, department, commission, board or other Federal entity, including the United States Postal Service.

(s) "United States marshal" is defined to include any designee or contractor of the marshal. See 28 U.S.C. §§ 561 and 562.

Section 3002 [*see 28 USC § 3003* ], Rules of construction

This section provides the general rules of construction, and also has four specific rules regarding admiralty, tax matters, criminal matters and receiverships. See 11 U.S.C. §§ 102(3), (5) and (7).

The Act provides that it will have no effect on cases arising in admiralty. The practice of admiralty is an area with well-established uniform rules, practices and procedures under Federal law.

With regard to Federal taxes, the Act will not impact upon administrative collection procedures under the Internal Revenue Code. Questions regarding tax judgments, including, but not limited to, the interest to be included, the creation, nature, duration and priority of a lien, the debtor's property subject to or exempt from liability to pay the judgment and the use of the levy procedure, shall be determined under the appropriate provisions of the Internal Revenue Code. However, judicial enforcement of tax judgments may be obtained under the Act; in dealing with tax judgments under the Act, the courts will apply the provisions of the Act so as not to limit or curtail any rights the United States has under the Internal Revenue Code. If the United States has not established any rights under the Internal Revenue Code, then the courts shall determine the rights of the United States under the Act. For example, if lien rights to the debtor's property have not been established under the Internal Revenue Code prior to

the United States obtaining a judgment or after obtaining judgment, then the provisions of the Act will determine the creation of a lien, its duration and priority of the United States and third parties and the property subject to or exempt from enforcement of the judgment if the United States seeks to do so by use of judicial proceedings. The Internal Revenue Code provisions relating to the disclosure and use of returns and return information will continue to govern in all proceedings under this chapter. See 26 U.S.C. § 6203.

Under 18 U.S.C. §§ 3565 and 3613, the procedures used to collect taxes are made applicable to criminal judgments. If necessary, criminal judgments may be judicially enforced under the Act, but the criminal code will determine many of the rights the United States has to collect fines, penalties, assessments, restitution and forfeitures. Any aspect of enforcement of a criminal judgment not dealt with by the criminal code will be controlled by the provisions of the Act.

The receivership provisions of the Act are intended to aid in debt collection litigation. It is not intended that the right of the United States to obtain a receiver in other settings, such as under the Small Business Investment Act of 1958, 15 U.S.C. § 687c, shall be curtailed or limited in any way.

Section 3003 [*see 28 USC § 3004*]. Nationwide enforcement

This section contemplates both nationwide service of papers and nationwide enforcement of orders and other process in cases under the Act, and thus creates another basis for jurisdiction. The United States may establish venue of suits by other statutory provisions. This section does not affect distances witnesses may be required to travel for various purposes under the Federal Rules of Civil Procedure or other applicable statutes, or the appropriateness of transfers of cases under 28 U.S.C. § 1404 or other provisions.

This section authorizes the enforcement of any writ, order, judgment or other process in any judicial district. Under the Act, it is not necessary to register a judgment in another district prior to its enforcement. This provision only applies to writs or orders relating to debts owed to the United States. Title 28 U.S.C. § 2413 is repealed by section 220 of this Act as this remedy is now included under this section of the Act.

Congress has previously provided for nationwide service of process. Bankruptcy Rule 7004(d) provides that a summons and complaint in a bankruptcy adversary proceeding, and all other process (except subpoena) may be served anywhere in the United States.

The courts have uniformly upheld the constitutionality of nationwide service of process. See *Terry v. Raymond International, Inc.,* 658 F.2d 398, 402 (5th Cir.1981); *Fitzsimmons v. Barton,* 589 F.2d 330, 333 (7th Cir. 1978); *Beaulieu v. Electronic Business Systems,* 632 F.Supp. 701, 703 (D.Me.1986); *In Re Wieboldt Stores, Inc.,* 94 B.R. 988 (N.D.Ill.1988); *In Re Outlet Company Stores, Inc.,* Bankr. 82, 694, 699 (S.D.N.Y. 1988); *Matter of Van Huffel Tube Corp.,* Bankr. 71, 145, 146 (N.D.Ohio 1987); and *In Re First Hartford Corp.,* Bankr. 63, 479, 486 (S.D.N.Y.1986). These courts and others have ruled that nationwide service does not abridge due process.

Section 3004 [*no 28 USC counterpart*]. Priority of claims of the United States

Certain priorities as to competing creditor claims are established or recognized under the Act. For example, under section 3306(c)(2)(I), writs of garnishment in favor of the United States are subordinated to writs of garnishment for child support. These priority provisions are superseded by 31 U.S.C. § 3713 in situations where the debtor or his estate is insolvent and they place the United States ahead of all other creditors. This preemption of priority allowing the United States to reduce its losses does not change existing law.

Section 3005 [*compare 28 USC § 3013*]. Claim of United States not barred by state statutes of limitations

This section codifies the general rule recognized by the United States Supreme Court in *United States v. Summerlin,* 310 U.S. 414

(1940), and the Courts of Appeals, *see, e.g.,* *United States v. Overman,* 424 F.2d 1142, 1147 (9th Cir.1970). Federal statutes of limitation and the general equity powers of the court will control whether or not a Federal claim is time barred. Where a recipient obtains excess payments by fraud, these payments should be recoverable once the fraud is discovered or even much later. See, *e.g., United States v. Podell,* 572 F.2d 31 (2d Cir.1978).

Section 3006. Right of set-off or recoupment [*no specific counterpart*]

This section makes clear that the Act has no effect on any existing rights of the United States under common law, Federal statute or regulation, to offset or recoup monies owed to the debtor by the United States. For example, where a Medicare provider is overpaid funds, Congress has directed that the overpayment be recouped from subsequent payments. 42 U.S.C.

§ 1395g(a). Courts have uniformly held that even in the absence of a statutory or regulatory right to recoup or offset, the United States may still recover debts in this manner. See, *e.g., Bell v. New Jersey,* 461 U.S. 773, (1983); *In Re A.H. Robbins Co., Inc.,* 846 F.2d 267, 271 n. 2 (4th Cir.1988) (citing with approval *In Re Midwest Service & Supply Co., Inc.,* 44 Bankr. 262, 266 (D.Utah 1983)); *Onslow County, N.C. v. U.S. Department of Labor,* 774 F.2d 607, 610 (4th Cir.1985); *First National Bank of Louisville v. Master Auto Service Corp.,* 693 F.2d 308, 310 n. 1 (4th Cir.1982); *Wilson Clinic & Hospital, Inc. v. Blue Cross of S.C.,* 494 F.2d 50, 52 (4th Cir.1974); *Russi v. Weinberger,* 373 F.Supp. 1349, 1352 (E.D.Va.1974); and *In Re Career Consultants, Inc.,* 84 Bankr. 419, 426 (E.D.Va.1988). These rulings are intended to remain in full force and effect.

Section 3007 [*compare 28 USC § 3015*]. Discovery

This section is intended to establish the broadest possible scope of relevancy for Federal discovery to find assets to pay judgments in favor of the United States, but it does not limit the inherent power of the court to limit discovery requests because of burdensomeness or for other appropriate reasons under the Federal Rules of Civil Procedure within the broad scope of relevancy established by this section as well as the Rules. Sections 3105 and 3307 are also applicable here, as they are to other provisions throughout the Act.

This provision makes clear that financial information is an appropriate subject of pretrial discovery; currently such discovery is not always available. Allowing such an inquiry is necessary to determine whether prejudgment remedies or other relief should be sought. Without this information regarding a debtor's assets, prejudgment remedies may be impracticable. This is a major problem in Federal debt collection. This information can also aid in settling cases before trial. The United States has no enforceable claim in a criminal proceeding until judgment has been entered. In cases having criminal aspects, other provisions of law may affect the scope, nature and right to discovery, see, *e.g.,* 21 U.S.C. § 881(i).

The second part of the provision merely establishes what is usually available under state law as a "supplementary proceeding" or a "judgment debtor examination," and makes clear that, after judgment, discovery may be had before any magistrate or judge at a time or place consistent with the Federal Rules of Civil Procedure. See, *e.g.,* 12 Ariz.Rev.Stat. Ann. § 12–1631, *et seq* (1986); N.Y.Civ. Prac.L. & R. (McKinney 1978), section 5223; and S.C.Code Ann. § 15–39–310, *et seq* (Law Co-op 1976).

The third provision sets forth the sanctions available to enforce compliance with discovery procedures. The sanctions are those traditionally available at common law or under the Federal Rules of Civil Procedure. See, *e.g.,* Fed.R.Civ.P. 37.

Section 3008 [*see 28 USC § 3006*]. Affidavit requirements

This section establishes the standard for allegations in affidavits submitted by the United States in enforcement proceedings. This provision recognizes the need to rely on books, records and computerized data where

evidence of reliability exists as provided by the Federal Rules of Evidence, since individuals with personal knowledge are not always available.

Hearsay may properly be used in affidavits to obtain relief in Federal cases even apart from this provision, which is declaratory of existing law—provided only that the hearsay be reliable, as is the case with search warrants and indeed generally under Federal Rules of Evidence 801–806. See, *e.g., Phillips v. Bruton,* 128 S.C. 369, 122 S.E. 514 (1924).

Section 3009 [*see 28 USC § 3007*]. Perishable property

This section provides the courts with the power and procedure to deal with the problems related to perishable property whenever they arise during the course of these proceedings. Commercial law has long recognized that where property subject to a lien is rapidly deteriorating, perishing or in danger thereof, the creditor may sell the security with abbreviated or even no notice to the debtor. See U.C.C. § 9–504(3) (1978). States have adopted similar provisions for quick sales of perishable property. See *e.g.,* VA.Code Ann. § 8.01–492 (1950 as amended). Courts have ruled that sales under such circumstances are commercially reasonable, fair and are not subject to later challenges. See *Ford Motor Credit Co. v. Solway,* 825 F.2d 1213, 1217 (7th Cir.1987) (citing Ill.Rev.Stat. ch. 26, para. 9–504(3); and *In Re Umbles Drew–Hale Pharmacy, Inc.,* 80 Bankr. 421, 424–25 (N.D.Ohio 1987) (notice of sale of pharmaceutical products securing Small Business Administration debt not necessary for deficiency claim where pharmaceuticals were perishable and rapidly declining in value, citing Ohio version of U.C.C. § 9–504(3). This section codifies the principle and case applications.

Section 3010 [*no 28 USC ch 176 counterpart*]. Immunity

This section provides for absolute immunity for counsel for the United States and non-attorney debt collection personnel employed by the United States from civil liability for errors, omissions or negligence in their individual and official capacities arising from performance of their official debt collection duties.

Fear of civil liability has a chilling effect on the performance of discretionary duties attendant to debt collection work. This section is not intended to cover private sector attorneys and their personnel who perform debt collection work for the United States.

Where injury is caused except through legitimate exercise of discretion, a remedy is, of course, provided under the Federal Tort Claims Act. See 28 U.S.C. § 2679(d) which was recently

amended by the Federal Employees Liability Reform and Tort Compensation Act of 1988, Pub.L. No. 100–694, 102 Stat. 4563 (1988); see also 134 Cong.Rec.S. 15597–99 (daily ed. Oct. 12, 1988) (comments of Senator Thurmond and Senator Grassley).

Section 3011 [*see 28 USC § 3008*]. Proceedings before United States magistrates

This section makes clear that proceedings under this Act can be assigned to the United States magistrate as under 28 U.S.C. § 636(b). The specific mention of the use of the United States magistrate is intended to encourage their use.

Currently, all debt collection by the United States proceeds in Federal courts, the majority of it in district courts. This Act should not change the volume of case filings. The Act does not establish any new causes of action but rather substitutes Federal enforcement procedures for state enforcement procedures. However, some districts may experience an increase in the number of enforcement proceedings because they may not have been available before under the state law which was used. The impact on the district court calendar of any such increase can be alleviated by reference of these proceedings to the magistrates.

Section 3012 [*see 28 USC § 3009*]. United States marshal authority to designate keeper

This section gives the United States marshal authority to designate another person or Federal agency to be responsible to hold for safekeeping property seized pursuant to the

provisions of this Act. The marshals are often unable to serve as keepers because of a lack of the necessary resources or expertise. This provisions expands the power and ability of the marshal set out in 28 U.S.C. § 564.

Section 3013 [*see 28 USC § 3010*]. Co-owned property

This section allows enforcement against property which is owned by the debtor along with others. This form of ownership would include, but is not limited to, joint tenancy, co-tenancy, tenancies by the entirety, community property and similar interests. In enforcing the remedies as to co-owned property, the law of the state where the property is located shall determine the extent to which this property may be subjected to payment of the debtor's debt to the United States. See, *e.g., Harris v. Crowder,* 322 S.E.2d 854 (W.Va.1984), where property held jointly by a divorced husband and wife was subjected to paying one of the husband's debts. See also the statutes of the various community property states where there are provisions for payment of the separate debts of one of the spouses out of the community property, *e.g.,* Ariz.Rev.Stat.Ann. § 25–215 (1986). Accordingly, this section will ensure that state laws on co-owned property, including community property, are respected under the Act.

Section 3013 has been expressly limited with regard to one kind of co-owned "property," the interest of an individual in a retirement system for Federal military or civilian personnel.

These retirement systems include, but are not limited to, the Civil Service Retirement and Disability System, 5 U.S.C. ch. 83, §§ 8301 *et al.* (1982); the Federal Employees Retirement System, 5 U.S.C. ch. 84, § 8401 *et al.* (Supp. IV 1986); the Foreign Service Retirement and Disability System, 22 U.S.C. ch. 14, subch. VIII (1982); the retirement provisions for members of the military services, 10 U.S.C. chs. 61, 63, 65, 67, 69, 71, 73, 75 (1982); and the Central Intelligence Agency Retirement and Disability System, Public Law 88–643, 78 Stat. 1043 (October 13, 1964) *as amended,* 50 U.S.C. 403.

Each of these systems, and others, creates complex schemes of rights and benefits for the covered personnel and for the surviving spouses, former spouses, and children of the covered personnel under the respective systems. It is not the intent of this legislation to disrupt or supersede these provisions of the various benefits plans by permitting state law to apply to create a right or interest of a debtor in the Federal retirement benefits of another person, and thereby make such benefits subject to debt collection, in conflict with the provisions of the retirement system invoked.

The Federal courts have generally recognized that the Supremacy Clause of the Constitution, Article VI, section 2, will not permit state law to apply to a statutorily-created or authorized Federal retirement system in conflict with Federal law. This question has frequently arisen in litigation involving the state laws of community property states. See *Ridgway v. Ridgway,* 454 U.S. 46 (1981); *McCarty v. McCarty,* 453 U.S. 210 (1981); *Hisquierdo v. Hisquierdo,* 439 U.S. 572 (1979); *Wissner v. Wissner,* 338 U.S. 655 (1950); *Money v. Office of Personnel Management,* 811 F.2d 1474 (Fed.Cir.1987); *Roebling v. Office of Personnel Management,* 788 F.2d 1544 (Fed.Cir.1986). Where Congress has determined that provisions of state property laws are applicable to Federal retirement benefits, it has done so with exactness and precision. It is not the intent of this legislation, therefore, including section 3013, to create some broad and general exception to the effect of the Supremacy Clause so as to make the interests of an individual other than the debtor in a Federal retirement system subject to state property laws and, thereby, subject to collection of the debt owed to the government by the debtor.

It is contemplated that co-owners of property will be afforded the opportunity to pay sums due the United States and claim over against the debtor should they wish to do so, before their property interests are disturbed, unless this is made impossible by reason of some emergency situation to the extent that temporary relief against the emergency situ-

ation is permitted by the Act or other applicable law.

Section 3014 [see 28 USC § 3011]. Assessment of charges on a claim

This section provides that the United States may recover a designated percentage of the debt as its pre-litigation costs, thus avoiding the additional expense and uncertainty of proving

actual costs. Similarly, no defendant will be penalized for contesting a claim by incurring additional costs, thus exerting a chilling effect on the exercise of the defendant's constitutional right to a day in court. See generally, Givens, *Creditor's Right to Collect Attorney's Fees: The State Law Issue,* 95 Banking L.J. 718 (1978).

The flat percentage set forth in this section is intended to cover all costs other than those routinely allowed to litigants without specific statutory provision and the special costs for postjudgment collection provided for but limited by section 3302(c). The flat percentage approach is appropriate because it makes a rough allocation of collection costs between the debtor and the creditor (public or private) which must accept a portion of such expense as part of the cost of engaging in a particular type of activity.

Deliberate non-payment of a debt clearly due and which the debtor can pay is clearly attributable to the debtor—and in egregious cases is subject to fraud sanctions, including those outside the scope of the Act. Extension of credit to marginal credit risks as a matter of governmental or business policy or strategy, on the other hand, is a cost of doing business. Since these mixed factors are hard to sort out in individual cases, rules of thumb are appropriate.

Plaintiff-only fee provisions are generally utilized only where a specific incentive to promote private enforcement of laws for protection of the public is defined as a congressional objective, as in some antitrust cases for example. Fairness demands that litigation cost liability be two-way where a normally less powerful litigant may have to pay the fees of a more powerful one as in many debt collection cases in the public and private sector. This is reflected in numerous state laws, see Givens, *supra,* p. 17, and is achieved in the Act by the applicability of the Equal Access to Justice Act (28 U.S.C. § 2412) to government litigation generally.

Section 3015 [no 28 USC ch 176 counterpart.] Funding

This section authorizes the appropriation of the funds necessary to implement the provisions of the Act and makes these funds available for one year.

Section 3016 [*no direct 28 USC ch 176 counterpart, but some discussion relevant to 28 USC § 3012*]. Investigative Authority

This section permits the United States to initiate an investigative proceeding to determine whether a claim for relief should be asserted under applicable law whenever it has reason to believe an activity in violation of legal standards threatens to deprive it of a claim. The section avoids the problem that facts sufficient to state a claim against a party must otherwise be present before discovery under the Federal Rules would be available to determine its liability.

The section would be applicable when a party's activities which violate state or Federal law may result in depriving the United States of an opportunity to recover on obligations owed to

it. For example, if an advertisement states that all who take Course X with Federally-guaranteed loans will be able to get jobs in Field Y at $45,000 or more and this is clearly known not to be so, the ability of the United States to recover on the loans involved is obviously jeopardized. *See* Berger, *Study Faults, Trade School Results,* N.Y. Times, Feb. 28, 1989, at 24, col. 1. There would be a clear risk in this instance that the students, because of the false representations given them, will incur obligations to the United States which they will be unable to pay. The false representations might violate 18 U.S.C. §§ 1341–1346 or state law, or both.

This provision of the Act was modeled on similar statutes authorizing "civil investigate

demand" (CID) powers. The Hart–Scott–Rodino Antitrust Improvements Act of 1976, codified at 15 U.S.C. § 1312 (1982), provides:

(a) Issuance; service; production of material; testimony. Whenever the Attorney General, or the Assistant Attorney General in charge of the Antitrust Division of the Department of Justice, has *reason to believe* that any person may be in possession, custody, or control of any documentary material, or may have any information, relevant to a civil antitrust investigation, he may, *prior to the institution of a civil or criminal proceeding* thereon, issue in writing, and cause to be served upon such person, *a civil investigative demand requiring such person to produce such documentary material* for inspection and copying or reproduction, *to answer in writing written interrogatories, to give oral testimony* concerning documentary material or information, or to furnish any combination of such material, answers, or testimony. Whenever a civil investigative demand is an express demand for any product of discovery, the Attorney General or the Assistant Attorney General in charge of the Antitrust Division shall cause to be served, in any manner authorized by this section, a copy of such demand upon the person from whom the discovery was obtained and notify the person to whom such demand is issued of the date on which such copy was served." (Emphasis added.)

A party may challenge the issuance of a CID on grounds of reasonableness generally. *See e.g., GAF Corp. v. Eastman Kodak Co.,* 415 F.Supp. 129 (S.D.N.Y.1976) (use and production of documents); *Assoc. Container Tranp. (Australia), Ltd. v. United States,* 705 F.2d 53 (2d Cir.1983) (appropriateness of enforcement of CID approved despite objections of relevance and act of state doctrine); *Phoenix Bd. of Realtors v. United States Department of Justice,* 521 F.Supp. 828 (D.Ariz.1981) (court upheld and enforced CID on challenges of relevance,

reasonableness, oppressiveness and burdensomeness); *Sterling Drug, Inc. v. Clark,* 1968 Trade Cas. (CCH) par. 72629 (S.D.N.Y.

1968) (allegations of burdensomeness and harassment re CID rejected); *Petition of Gold Bond Stamp Co.,* 221 F.Supp. 391 (D.Minn.1963) *aff'd.* 325 F.2d 1018 (8th Cir. 1964) (claims of privilege and burden evaluated); and *Petition of Emprise Corp.,* 344 F.Supp. 319 (W.D.N.Y.1972) (challenge to relevance of information sought by CID heard and rejected).

Similarly, the Federal Trade Commission (FTC) has broad powers to investigate violations before filing suit. The FTC's authority is contained in 15 U.S.C. § 57b–1 (1982) which provides:

Section 57b–1. Civil investigative demands. (c) Issuance of demand; contents; service; verified return; sworn certificates; answers; taking of oral testimony. (1) Whenever the Commission has *reason to believe* that any person may be in possession, custody, or control of any documentary material, or may have any information, relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of section 45(a)(1) of this title), the Commission may, *before the institution of any proceedings* under this Act, issue in writing, and cause to be served upon such person, *a civil investigative demand requiring such person to produce such documentary material* for inspection and copying or reproduction, to file written reports or *answers to questions, to give oral testimony concerning documentary material or other information,* or to furnish any combination of such material, answers, or testimony. (Emphasis added.)

The CIDs have been upheld as constitutional. *Hyster Co. v. United States,* 338 F.2d 183 (9th Cir.1964); *Petition of Columbia Broadcasting System, Inc.,* 235 F.Supp. 684 (S.D.N.Y.1964).

Other agencies have utilized CID powers to accomplish their statutory duties. See, *e.g., O'Byrne v. Cheker Oil Co.,* 727 F.2d 159, 165 (7th Cir.1984) (Federal Energy Administration civil investigative demand). The Internal Revenue Service proceeds in the same manner with administrative summonses.

Throughout the Code of Federal Regulations (C.F.R.) are similar grants of investiga-

tive powers. See, *e.g.,* 14 C.F.R. §§ 13.3(c), 13.103, 13.111 (Federal Aviation Administration to conduct investigations of alleged violations of Federal Aviation Act of 1958, or Hazardous Materials Transportation Act); 47 C.F.R. §§ 1.311–1.340 (discovery in proceedings before Federal Communications Commission); 18 C.F.R. §§ 1b.1–1b.20 (investigative procedures of Federal Energy Regulatory Commission); 46 C.F.R. §§ 502.61–502.74, 502.201–502.210, 502.281–502.289 (investigative procedures of Federal Maritime Commission); 24 C.F.R. § 3282.155 (HUD investigative powers for manufactured housing standards); and 49 C.F.R. §§ 510.1–510.12

(investigative powers of National Highway Traffic Safety Administration). Each of these regulatory investigative systems uses the same language, procedures and rules as set forth in the bill.

It should be noted that a civil investigative demand such as that here is not self-enforcing. Thus, if a party refused to comply, the United States would have to seek an enforcement order from a district court. At that time, the party objecting to the investigation would have its full due process rights to protect its interests in privacy, or otherwise.

Section 3017 [*compare 28 USC § 3012 except that S 1961 version provided for direct initial governmental suit against third-party provider* ]. Subrogation

While failure of performance on the part of third parties providing goods or services to recipients of loans guaranteed by the United States affords no defense against the United States in its actions to recover the funds, such failure may, of course, provide a basis for recovery against the provider.

This provision thus contemplates that the government will, through appropriate means, assist in providing information about such options where it appears that claims against third parties may be proper. This will benefit not only the debtor who may have been defrauded, but also the interests of the United States, in several respects:

1. By helping to prevent the erroneous impression from arising that the government is acting as a debt collector for providers who may have acted improperly.

This is important both to the government's reputation with the citizens involved and to assure maximum cooperation with proper debt collection efforts by both the public and courts which are properly sensitive to these problems.

2. By providing another means of law enforcement against irresponsible providers as the marketplace would in the absence of a public sector guarantee of the debt, inasmuch as assertion of defenses such as breach of warranty may normally prevent private creditors who act improperly from collecting.

Through this means, the debt collection effort can thus not only aid the government's endeavor to bring in revenue to offset its expenditures under loan and loan guarantee and similar programs, but also promote the objectives likewise sought by anti-fraud statutes, such as the Federal Trade Commission Act (see 15 U.S.C. §§ 45, 53(b)) and mail fraud statute and its companion and injunctive enforcement provisions (18 U.S.C. §§ 1341–45).

Inability to collect debts where the customer has a counterclaim or defense is an important means of policing in the private sector, inhibited from fulfilling its function if governmental guarantees assure payment to a provider, unless the customer is aware of mechanisms to assert rights created by law. *See generally,* New York Regional Office, Federal Trade Commission, *Report on Debt Collection Hearings* (1973).

Normally, where a governmentally-granted or guaranteed loan is not involved, a consumer may assert against a creditor acting in concert with a seller of goods or services a claim or defense available against the seller. 16 C.F.R. § 433.1–433.3; Smith, "Preserving Consumers' Claims and Defenses," 63 A.B.A.J. 1401 (October 1977). The procedure to be followed under the present section is designed to achieve a similar objective, but without impeding governmental collection of obligations due the United States.

Under Rule 14(a) of the Federal Rules of Civil Procedure, third party claims may be asserted by a defendant against "a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff."

Where such a third party may be liable to the defendant for sums due, the debtor has an absolute obligation to the United States, but may be able to collect this amount in whole or in part from the provider. The provider's liability may be based on other aspects of the same transaction giving rise to the claim of the United States, arising under other legal principles, including state law or any applicable Federal law (*e.g.*, the Truth in Lending Act, 15 U.S.C. § 1635 or Magnuson–Moss Federal Warranty Act, 15 U.S.C. §§ 2301 *et al.*, or other statutes). *See American Fidelity & Casualty Co. v. Greyhound Corp.*, 232 F.2d 89 (5th Cir.1956); see also *Moor v. Alameda County*, 411 U.S. 693 (1973); *Dery v. Wyer*, 265 F.2d 804 (2d Cir. 1959).

It is contemplated that ancillary jurisdiction over such cases would be exercised by the Federal courts where appropriate. No independent ground of jurisdiction is needed where a proper third party claim is asserted. *Revere Copper & Brass, Inc. v. Aetna Casualty & Surety Co.*, 426 F.2d 709 (5th Cir.1970).

To date, the courts have not delayed processing the claims of the United States pending resolution of third party claims, nor is it contemplated that the courts will do so; if such delay would result, the third party claim can be severed.

In some cases, debtors may invoke Rule 14(a) or the United States may choose to inform debtors of their existing rights to do so; in other instances, a large number of third party proceedings against a particular third party provider might be cumbersome or cause delay, particularly if debtors are not represented by counsel. Under these circumstances, section 3017 permits the United States to recover funds owed to it where the initial debtors may be numerous and impecunious but have claims against a third party

arising out of the transaction which brought about the debt, and which can be recovered much more economically in some instances. In the example discussed in connection with section 3016, the United States would be permitted to proceed against the institution guilty of fraud to recover sums due the students under state, or Federal law, which would then be applied to the debts owed to the United States by the students.

The effect of invocation of section 3017 would be the same as that of filing of third party complaints by the original obligors under Rule 14 of the Federal Rules of Civil Procedure to recover sums due them, which, in turn, would be paid to the United States to satisfy its original complaint. Section 3017, however, permits this result to be achieved economically because a large number of individual parties need not file third party complaints under Rule 14.

The Act contemplates as previously described that the United States will explain Rule 14 procedure to debtors in appropriate cases. But Rule 14 process may be difficult to implement where a large number of obligors are involved who cannot afford counsel and do not understand legal procedure. The circumstances in which the original obligor is a necessary or otherwise appropriate party in a proceeding under section 3017 will be determined under general principles pursuant to the Federal Rules of Civil Procedure.

Section 3017 seeks to promote four objectives:

(1) It permits the United States to recover sums due it more efficiently and economically through a single action in which a much larger amount may be obtained;

(2) It assists the functioning of the marketplace by avoiding a situation in which a provider who would encounter defenses such as fraud, breach of warranty, failure of consideration or breach of contract in an ordinary private transaction is nevertheless able to recover in full because of the presence of a Federal credit program;

(3) It avoids hardship to an obligor who must otherwise pay the United States to the extent of available assets, without being able

to recover offsetting sums due from a third party unless able to obtain counsel or handle what may at times be extensive litigation without legal representation;

(4) It protects legitimate competitors of a provider engaged in improper practices from being placed at an unfair advantage by illegal conduct which goes unremedied.

Section 3018 [*see Federal Debt Collection Procedures Act § 3631*]. Effective date

This section establishes an effective date for the provisions of this Act 180 days after enactment and makes the Act applicable to all claims, litigation and judgments in favor of the United States regardless of when they occurred.

### SUBCHAPTER B—PREJUDGMENT REMEDIES

The prejudgment remedies provided for in the Act are modeled on existing state law. Often, use of prejudgment remedies is not practicable due to the lack of information regarding a debtor's assets. It is anticipated that the prejudgment remedies provided for in the Act, in tandem with the discovery provisions, will create a practicable system by which the United States can secure its position vis-a-vis delinquent debtors who are intent upon evading collection efforts to recover monies due to the United

States. The pre-conditions set forth in sections 3101 and 3102 apply to all prejudgment remedies, including those more specifically described in subsequent sections of the Act.

Section 3101 [*compare 28 USC § 3101, replacing S 1961 §§ 3101–3102*]. Prejudgment remedies with prior notice

These provisions are intended to create a practical method for the United States to obtain prejudgment remedies to secure payment of monies owed to the United States if and when a judgment is later obtained. Currently, prejudgment remedies under state statutory schemes vary greatly. In many states, use of prejudgment remedies is impractical. *See* Crandall, *Debtor–Creditor Law Manual*, § 6.04[5][6] (1985). Under

other state statutory schemes, the Federal government can obtain prejudgment relief, when circumstances merit, in an expedient fashion. See Cal.Civ.Proc.Code, §§ 481.010–488.570 (West 1979 & Supp.1989). The Act will eliminate these differences.

Due process requirements have been given careful consideration. The provisions of the Act are modeled upon existing statutory language from the laws of various states. See, *e.g.*, Ariz.Rev.Stat.Ann. § 12–2403 (1982). Under the Act, Federal debtors are afforded notice and a prompt opportunity for hearing. See *Sniadack v. Family Finance Corp.*, 395 U.S. 337 (1969). Debtors continue to be able to seek relief from any prejudgment remedy under the Federal Rules of Civil Procedure.

Absent a timely request for a hearing, as stated in the notice set forth in subsection (c), the United States may proceed with the prejudgment remedy sought with the court's permission. A late request for a hearing thus does not by itself automatically stop any prejudgment remedy from proceeding.

Although a request for a hearing after the time specified in subsection (e) could be treated by the court as an application under section 3307 for a protective order, or under section 3105 for injunctive relief if warranted by the circumstances, under section 3101(f), a hearing before the prejudgment remedy is granted (even if then not yet effectuated), is no longer a matter of right after the twenty-day period has expired.

As indicated by the Federal Rules of Evidence and case law concerning prejudgment decisions which afford somewhat more evidentiary leeway than at trial, hearsay may be used if it is reliable and there is a reasonable necessity for using it, but underlying records such as statements of account should ordinarily be attached if readily available. These criteria apply to both the required showing that the underlying claim has merit and that there is a reasonable need for the prejudgment remedy sought. Sections 3105 and 3307 are applicable to requests by the United States or any debtor for pre- or post-implementation relief with regard to prejudgment remedies under sections 3101 and 3102.

These provisions require notice to the debtor before the court allows the writs to issue; the same remedies are available under section 3102 without prior notice after other prerequisites set forth therein are met. The requirement that the clerk of

court "shall issue notice" in subsection (c) is parallel to the issuance of a summons. The party invoking a prejudgment remedy is responsible for the document. The clerk's duty is simply to issue it under the clerk's name and the court's seal.

Section 3102 [*compare 28 USC § 3101*]. Prejudgment remedies without prior notice

This provision allows the United States to obtain expedited prejudgment remedies without notice before the writs are issued. The court maintains supervision of the issuance of these writs; they are not perfunctorily issued by the clerk. The court must be satisfied that specific prerequisites are established by the United States before the writs are issued. The debtor is given notice of the writ concurrently with the exercise of the remedy by the United States. A prompt hearing is then allowed where the debtor can challenge the proceeding.

These extraordinary remedies are only available in circumstances in which the debtor is evading the jurisdiction of the United States or evidencing the intention of defrauding the United States. For example, temporary absence from the United States would justify a prejudgment remedy if necessary to protect assets to pay the claim under these circumstances or if there is reason to believe the travel has the purpose or effect of hindering, delaying or defrauding creditors. If, for example, a person, whose known assets consist principally of bearer securities which are in a vault controlled by an agent who will obey telephonic instructions for shipment, boards a plane for a foreign country, prejudgment steps to secure those securities would be appropriate under subdivision (8).

The terms "illegally" or "by fraud" in subdivision (9) carry the connotation of intentional wrongdoing, *i.e.*, conduct that any ordinary person would know was improper whether or not the particular section of law involved was known. *See* Note, *Ignorance of the Law as an Excuse*, 86 Colum.L.Rev. 1392 (1986) For example, if a medicare provider lists substantial claims for a large number of extractions of teeth and several witnesses say these operations were never performed, a prejudgment remedy would be justified under subdivision (9) pending further proof. The nature of the conduct suggests the likelihood of secretion of assets once a suit to collect a debt to the United States is brought.

As indicated by the Federal Rules of Evidence and case law concerning prejudgment decisions which afford somewhat more evidentiary leeway than at trial, hearsay may be used if it is reliable and there is a reasonable necessity for using it, but underlying records such as statements of account should ordinarily be attached if readily available; these standards apply both to a showing that the underlying claim is meritorious and the need for the prejudgment relief sought.

These sections are also based upon existing state statutes which meet the requirements of the current case law in this area. *See, e.g.*, Ariz.Rev.Stat.Ann. § 12–2402 (1982). The U.S. Supreme Court has previously upheld similar state law provisions

ruling they do not violate constitutional due process requirements. *See Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1974) (Louisiana prejudgment remedy upheld where issued upon verified affidavit and debtor has opportunity for post-attachment hearing). *Compare North Georgia Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601 (1975) (Georgia prejudgment garnishment statute providing for writ issuance on affidavit containing only conclusory allegations and no provision for early hearing to challenge use of remedy struck down on due process grounds). *See also, Schiffahartsgesellschaft Leonhardt v. A. Boltachi S.A. De Navegacion*, 773 F.2d 1528 (11th Cir.1985) (immediate post-attachment hearing afforded sufficient procedural due process).

Section 3103 [*see 28 USC § 3102*]. Attachment

This section establishes a procedure whereby the United States can secure sufficient property of the debtor before judgment to ensure satisfaction of the judgment, if and when obtained, in circumstances where there is a serious risk that the property will diminish in value, be wasted or disposed of if left in the possession of the debtor. *See* Ariz. Rev.Stat.Ann. §§ 12–1521 *et seq.* (1982). For example, sale of a residence constituting the principal asset of a debtor and expected conversion of the proceeds into cash would justify the attachment of the residence in the presence of a substantial claim whose probable validity has been shown. This prejudgment remedy creates a lien in favor of the United States on the property attached. *See, e.g.,* Ariz.Rev.Stat.Ann. § 12–1532.

Sections 3103(m), 3105 and 3307 are available for relief if unduly harsh consequences are created by an initial attachment which turns out to be excessive in relation to the requirements needed to protect the claim of the United States. It is contemplated that a motion to abate an excessive attachment will be made by notice of motion under the Federal Rules of Civil Procedure.

Here, as throughout the Act, the court must be sensitive to the crucial needs of the United States and the debtor in shaping interim relief under applicable provisions and sections 3105 and 3307. The remedy of attachment will safeguard property when immediate action may be necessary, as where a farmer has left animals unattended or crops spoiling in transit.

Section 3104 [*see 28 USC § 3104*]. Garnishment

This section establishes a procedure whereby the United States can secure before judgment property of the debtor or due the debtor in the hands of a third party in circumstances where that property will be transferred, disposed of or otherwise put beyond the reach of the United States. *See, e.g.,* Ariz.Rev.Stat.Ann. §§ 12–1521 *et seq* (1982). Garnishment is generally discussed at Section 3306.

Section 3105 [*see 28 USC §§ 3003(c)(7), 3013; Cong Rec H13289 (daily ed Oct 27, 1990) (statement of Rep. Brooks)*]. Injunctions

This section is applicable to the entire Act and invokes the powers of the court as a court of equity to take whatever action may be necessary to protect the rights of the United States, debtors and third parties. It makes clear that this Act is not intended to alter any existing right to seek injunctive relief. *See* Fed.R.Civ.P. 65 and 28 U.S.C. § 1651.

Section 3106 [*see 28 USC § 3105*]. Sequestration

This section creates a procedure for obtaining possession of or setting apart specific property upon which the United States has a claim of ownership or a right, lien or privilege in order to preserve the property pending the litigation so that it may be subjected to any final judgment or decree. Sequestration also may be used to restore to the United States the possession of property which may have been forcibly or unlawfully taken from the United States by the debtor. This remedy is valuable in circumstances involving growing crops and livestock which are being improperly tended or where machinery is allowed to fall into disrepair. It is not meant to prevent the debtor from continuing to use the property in a productive fashion that would be beneficial to the United States and other creditors. Property that is converted to the debtor's use in a manner adverse to the interest of creditors is grounds for sequestration. Service of the writ shall be in the same manner as for a writ of execution. *See* Tex.Civ.Prac. & Rem. Code Ann. §§ 62.001, 62.022 (Vernon 1986).

Section 3107 [*no specific 28 USC ch 176 counterpart*]. Replevin

This section creates a prejudgment remedy that enables the United States to regain immediate possession of specific personal property in which the United States has an existing interest pending the final outcome of the litigation over the property. This remedy is frequently used in cases where the United States has sold surplus goods, but the

debtor after taking lawful possession of the goods fails to pay for them. The United States can then seek the return of the property.

Section 3108 [*see 28 USC § 3103* ]. Receivership

This provision affirms and expands the inherent power of the Federal court to appoint receivers. *See U.S. v. Sylacauga Properties, Inc.,* 323 F.2d 487 (5th Cir.1963); *U.S. v. Victory Highway Village, Inc.,* 662 F.2d 488 (9th Cir.1981). For example, this remedy is utilized in circumstances where the United States has a security interest in a multi-family dwelling and the security consists of the real property and the rents therefrom. *See, e.g.,* Tex.Civ.Prac. & Rem.Code Ann. § 64.001 (Vernon 1986). In circumstances where the rents and property are being mismanaged, the appointment of a receiver can be sought to assure that the property is preserved, the rents are properly applied and the debts to the United States are properly serviced.

The Act provides that this relief will be available to the United States without notice if it holds a security agreement. *See, e.g.,* N.Y. Real Property Law § 254(10) (McKinney, 1968); *U.S. v. Mountain Village Co.,* 424 F.Supp. 822 (D.Mass.1976). For example, prompt action to take possession of property is often necessary where tenants of a multi-family dwelling are not receiving services or repairs. Receivers may be appointed to take possession of real, personal or mixed property. *See, e.g., U.S. v. American National Bank & Trust Company,* 573 F.Supp. 1319 (N.D.Ill.1983) (Treasury bills). The Act provides for judicial supervision of the receiver after he is appointed. *See also* N.Y.Civ.Prac.L. & R. §§ 6401–6405 (McKinney's, 1968); Tex.Civ.Prac. & Rem.Code Ann. §§ 64.021–64.035 (Vernon 1986).

### SUBCHAPTER C—JUDGMENTS; LIENS

Section 3201 [*no 28 USC ch 176 counterpart* ]. Judgment by confession

This section provides an expeditious method for the United States to obtain confessed judgments in the instance of default by a debtor. It is designed to minimize litigation and expenses to both the United States and the debtor. This remedy is not available under some state statutory schemes because of concern of abuse by unscrupulous creditors. Because of Congressional and judicial oversight, the likelihood of such abuse by the United States is remote. Under this section, judgment by confession cannot be sought until the debtor is in default and he has been given notice of his default.

The United States Supreme Court has held that these judgments are valid if there is a valid waiver of notice and hearing by the debtors. *See D.H. Overmeyer Co., Inc., of Ohio v. Frick Co.,* 405 U.S. 174 (1972), and *Swarb v. Lennox,* 405 U.S. 191 (1972). This procedure can be used to secure a voluntary repayment agreement without the need to commence a civil action. See, *e.g.,* S.C.Code Ann. §§ 15–35.350 to 380 (Law Co-op 1976).

Section 3202 [*see 28 USC § 3201* ]. Judgment lien

Under the Act, a judgment lien is created by the filing of an abstract of judgment in the manner in which a notice of Federal tax lien would be filed under 26 U.S.C. §§ 6323(b)(1) and (2). The lien attaches to all of the debtor's real property and has priority over all subsequent liens. The lien lasts for twenty years and may be renewed for an additional twenty-year period. Often passive enforcement of the lien is preferable to seeking eviction and execution sale of the property. If a judgment lien is not satisfied, the debtor may be ineligible for Federal grants, loans or program assistance other than subsistence programs.

Criminal and tax judgment liens are created by other provisions of the United States Code. Pursuant to 18 U.S.C. § 3565(h) and § 3613(b), criminal judgment liens last twenty

years. Tax judgment liens are controlled by the provisions of 26 U.S.C. § 6322 and this section.

Section 3203 [*see 28 USC § 3201(f)* ]. Sale of property subject to judgment lien

This section allows for the sale of property to satisfy judgments by supervised judicial sales under 28 U.S.C. §§ 2001 and 2002, but, it does not preclude unsupervised execution sales under section 3304 of the Act. Property can be sold based upon a judgment lien created by criminal and tax judgments as well.

Section 3204 [*no specific 28 USC counterpart* ]. Interest on judgments

All judgments, other than criminal or tax judgments, will include interest as provided in this section. Tax judgments and criminal judgments will include interest as provided in title 26 and title 18 of the United States Code, respectively. This provision is intended to establish an incentive to prompt payment and to offset the cost of failure to pay the United States by employing flexible interest rates that reflect the rate agreed to by the debtor, the market rate or the Federal program rate. Current law (28 U.S.C. § 1961) does not do this. These are three possible bases for determining the interest rate under this provision.

**SUBCHAPTER D** [*compare 28 USC ch 1976, subch C* ]—**POSTJUDGMENT REMEDIES**

Section 3301 [*see 28 USC § 3202* ]. Enforcement of judgments

This section provides the general direction that any judgment in favor of the United States can be enforced by the use of any of the remedies or combination of the remedies provided in the subchapter. It also adopts the "all writs" provisions of 28 U.S.C. § 1651, subject to Rule 81(b) limitations under the Federal Rules of Civil Procedure, which allows the Federal courts to use other writs of the common law to enforce their judgments. The courts have uniformly held that pursuant to 28 U.S.C. § 1651 they may issue any orders necessary or appropriate in aid of their jurisdiction and agreeable to the usages and principles of law. *See Carlson v. Green,* 446 U.S. 14 (1980). The courts have utilized this general authority in all facets of litigation from trial procedure matters, *see, e.g. In*

*Re Recticel Foam Corp.,* 859 F.2d 1000 (1st Cir.1988) (Pretrial discovery cost assessment) to enforcement of orders and judgments. *See, e.g., State of New York v. Shore Realty Corp.,* 763 F.2d 49 (2nd Cir.1985), and *Keishian v. Buckley,* 752 F.2d 1513 (11th Cir.1984). This section conforms with these holdings to allow broad flexibility in enforcing judgments.

The section also allows for the sale of property to satisfy judgments by either supervised judicial sales or the unsupervised execution sale procedure.

Section 3302 [*compare 28 USC §§ 3003(c)(7), 3013, 3202(a)* ]. Orders in aid of execution

Subsection (a) creates a summary procedure whereby the United States may seek other means of reaching property of the debtor which cannot be attached or levied by ordinary legal process; such as when property is secreted. Remedies under this section are of an equitable nature and are derived from existing state law. *See* Tex.Civ.Prac. & Rem.Code Ann. § 31.002 (Vernon 1986).

There are certain types of property and property rights that are not amenable to execution, either by the nature of the title or interest, or the location or concealability of the property or interest therein, or by the very nature of the property itself. Texas recognized this problem and in 1979 passed the "Texas Turnover Statute," Tex.Civ.Prac. & Rem.Code Ann. § 31.002 (Vernon 1986).

It is not necessary that the United States exhaust other legal remedies, such as execution, prior to seeking relief under this provision; all it must show is that the property or property rights cannot be readily attached or levied on by ordinary legal process; thus in *Hennigan v. Hennigan,* 666 S.W.2d 322 (1984), an ex-wife was able to secure a turnover of the accounts receivable of her ex-husband (an attorney) to satisfy a judgment for the attorney's fees awarded her in the divorce case. Likewise, in *Matrix, Inc. v. Provident American Insurance Co.,* 658 S.W.2d 665 (1983), a promissory note payable to the debtor and in the hands of the debtor was ordered turned over to the sheriff for

sale. In *Arndt v. National Supply Co.,* 650 S.W.2d 547 (1983), the debtor was punished by contempt when he failed to turn over property (although not specifically stated, there are indications that the property was notes, stocks, and accounts receivable) to a receiver appointed by the District Court. In *Pace v. McEwen,* (1981), this statute was used to establish the procedure by which the court determined whether or not money wrongfully obtained was used to purchase a homestead, and whether or not the property was actually a homestead and thereby exempt from execution.

Provision is made for recovery of costs and attorney's fees by the United States upon its request if the actions of the debtor require use of this section. The term "Federal law" in this section includes any applicable regulation or contract provision establishing its own measure of costs. See Toben and Livesay, *Article 3827A and the Maturation of the Creditor's Bill Remedy in Texas,* 37 Baylor L.Rev. 587 (1985), for discussion of similar legislation.

Under subsection (b), a receiver may be appointed to assist in satisfying a money judgment. Once appointed, a receiver has the powers and duties provided by section 3108 of the Act as well as those provided under other Federal laws, *e.g.,* 28 U.S.C. § 957 and Fed.R.Civ.P. 66, to the extent that these laws are consistent with the requirements of the Act. A receiver may be appointed to dispose of property which is the subject of the action, *e.g.,* partition actions. A receiver may also be appointed to sell property where an execution sale is unlikely to generate significant proceeds, *e.g.,* sales of stamp collections or art work. In addition, a receiver may be appointed to collect rents or profits from income-generating property or to sue on a

cause of action owned by a judgment-debtor against a third party. *See, e.g.,* N.Y.Civ. Prac.L. & R. §§ 5106 and 5228 (McKinney's, 1978).

Section 3303 [*see 28 USC § 3202(a)* ]. Restraining notice

This section establishes a summary procedure whereby the clerk of the court or the counsel for the United States may serve a restraining notice to prohibit the judgment debtor or any third party, other than the judgment debtor's employer, from disposing of assets. The debtor may continue to support himself and his family, but is prevented from transferring assets not needed for that purpose. This notice has the effect of encouraging satisfaction of the judgment.

A restraining notice may also be used in conjunction with other enforcement devices to maintain the status quo while the United States seeks to enforce its judgment. For example, the notice can be served on a bank when the debtor is believed to have an account there. The bank would be required to freeze the debtor's account and advise the United States of the amount on deposit in the account.

*See Plaza Hotel Assoc. v. Wellington Assoc.,* 84 Misc.2d 777, 378 N.Y.S.2d 859 (1975), for a discussion of the general nature of this remedy as used under the New York law from which this provision was derived. *See* N.Y.Civ.Prac.L. & R., § 5222 (McKinney's, 1978).

Section 3304 [*see 28 USC § 3202* ]. Execution

This section is a comprehensive execution statute, subject, of course, to Rule 62 of the Federal Rules of Civil Procedure. Sales of property under this statute do not require judicial participation as under 28 U.S.C. §§ 2001 and 2002 but the court may grant any relief necessary under section 3307. It should be noted that there is no requirement to execute on personal property before executing on real property, as required in some states. *See, e.g.,* S.C.Code Ann. § 15–39–80 (Law Co–Op., 1976); Va.Code Ann. § 8–01–203 (1950 as amended). Such state requirements are unnecessary and interfere with effective judgment execution. Also to be noted is the fact that multiple and successive writs may issue. This is in accord with current state practice. *See, e.g.,* Va.Code Ann. § 8.01–475 (1950 as amended). No redemption by the debtor is allowed. If other provisions of law abate enforcement of a claim against the estate of a deceased judg-

ment debtor, then the provisions dealing with enforcement after the death of a judgment debtor would not apply to such claims. In giving notice of an execution sale, the United States marshal must use "due diligence" in determining who should receive the notice. In giving notice of execution sales, the United States marshal must comply with the requirements of *Mennonite Board of Missions v. Adams*, 462 U.S. 791 (1983) and *Mullane v. Central Hanover Bank and Trust Co.*, 339 U.S. 306 (1950).

A co-owner should normally have an opportunity to arrange payment before execution against co-owned property.

The inherent equitable authority of the court to control the execution of the writ as to timing of sale or postponing of sale is not disturbed or limited by the Act. This conforms with current state law. *See, e.g.*, Va. Code Ann. §§ 8.01–370–72 (1950 as amended).

Section 3305 [*see 28 USC § 3204*]. Installment payment order

This section provides that upon motion of the United States where a judgment debtor is receiving or will receive money from any source or is attempting to avoid an obligation on the judgment debt by rendering services without adequate compensation, the court may order specified installment payments by the judgment debtor to the United States after consideration of the needs of the debtor and of the United States. *See Yamamoto v. Castello*, 73 Misc.2d 592, 342 N.Y.S.2d 33 (1973). Availability and use of this remedy will induce debtors to enter into payment schedules and ensure that recalcitrant debtors can be required to enter such plans for the repayment of their judgment debts to the United States.

This section will be particularly helpful in reaching the income of self-employed debtors such as doctors and lawyers. It can also be used to reach income of Federal, state and local government employees where garnishment is prohibited, *see Erenerol v. McCarthy*, 20 A.D.2d 798, 248 N.Y.2d 464 (1964) and can permit debtors who agree to an

order for reasonable payments to avoid execution against their own property so long as the payments are made. *See* N.Y.Civ. Prac.L. & P. § 5226 (McKinney's, 1978).

Section 3306 [*see 28 USC § 3205*]. Garnishment

This section sets forth the procedures for obtaining non-exempt personal property of the debtor in the possession, custody or control of a third party. *See, e.g.*, Ariz.Rev.Stat. Ann. §§ 12–1570 *et seq* (1982). Property so held can easily be removed or assigned beyond the reach of the United States.

There is a lack of uniformity in state law in this area. There is no procedure for garnishment under some state statutory schemes. *See, e.g.* S.C.Code Ann. § 37–5–104 (Law Co-op, 1976). In others, the need for repetitive writs increases the costs to the debtor and makes this remedy impractical for the government. *See, e.g.*, Michigan Court Rule 3.101.

Garnishment of the debtor's earnings and other property are addressed separately. Only a single application is needed to obtain a continuing lien upon earnings. Notice of the garnishment proceeding is given to the debtor at various stages and also allows for opportunities for hearings. This recognizes an apparent trend in the case law to require a certain amount of notice and opportunity for hearing even in postjudgment situations. *See, e.g.*, *Finberg v. Sullivan*, 634 F.2d 50 (3rd Cir.1980), *Deary v. Guardian Loan Co., Inc.*, 534 F.Supp. 1178.

(S.D.N.Y.1982). Prejudgment garnishment must meet the additional requirements of sections 3101 and 3102.

While the clerk issues the writs, the court provides supervision at critical points such as considering objections to the answer of the garnishee, determining the garnishee's liability for not answering, entering the disposition order, and hearing objections to the accounting. This ensures due process for the debtor.

The Act requires the United States to give certain instructions to the debtor. All instructions to the debtor, including any notice

of exemptions under the Act, will be served by the United States on the employer or other garnishee with the writ of garnishment.

The United States is not given any priority over other creditors with prior garnishments or support orders. The government may obtain voluntary wage assignments as an alternative or substitute for garnishment proceedings. Voluntary assignments would be subject to restrictions under state law as to state and local employees.

Wage garnishment under this Act is limited to twenty-five percent of disposable income, which is in accord with the existing Federal limitation set forth in the Federal Consumer Credit Protection Act of 1968, at 15 U.S.C. § 1672(b).

Section 3307 [*see 28 USC § 3013*]. Modification of protective order; supervision of enforcement

This section acknowledges the court's overall supervisory function in the litigation and judgment enforcement processes and recognizes its authority to enter and modify protective orders and supervise the litigation and the enforcement of its judgments. This section recognizes the court's general powers of equity in administering the provisions of this Act. It may be invoked at any time during the litigation and enforcement processes. This section eliminates the need to anticipate all possible abuses or problems by investing broad powers in the court to issue protective orders or fashion other appropriate forms of relief. *See* N.Y.Civ.Prac.L. & R. § 5240 (McKinney's, 1978).

Section 3308 [*see 28 USC § 3003(c)(8)(A)(C)*]. Power of the court to punish for contempt

This section recognizes the court's traditional power to punish for contempt with respect to an enforcement procedure or order. This contempt power is not unique to proceedings in aid of execution; however, it can be particularly effective in such a proceeding. For example, a restraining notice may be issued pursuant to section 3303 of this Act to prohibit the judgment debtor from disposing of assets. If the debtor violates such notice, he stands in contempt of court. The court can hold defendants in civil or criminal contempt under the Act. See, *e.g.,* N.Y.Civ.Prac.L. & R. § 5251 (McKinney's, 1978).

Section 3309 [*no 28 USC ch 176 counterpart*]. Arrest of judgment debtor

This section is modeled upon existing state law, see, *e.g.,* N.Y.Civ.Prac.L. & R. § 5250 (McKinney's, 1978) and provides that upon motion and without notice by the United States the court shall have the power to issue a warrant to the United States marshal to arrest the judgment debtor forthwith in proper circumstances.

The United States must show by affidavit or otherwise that the judgment debtor is about to depart from the jurisdiction of the United States or keep himself concealed with the intent to hinder, delay or defraud the United States and that he may have in his possession or custody nonexempt property in which he has an interest. Intent may be established by course of conduct. The court may order that the judgment debtor post a bond, appear before the court for examination and obey the terms of any restraining notice contained in the order.

Presently existing procedures govern the handling of an arrestee who has been arrested in a district other than that from which he absented himself. Any confusion as to where an arrestee should be initially brought is addressed by Federal Rule of Criminal Procedure 40(c) which provides that a person arrested in one district on a warrant for failure to appear pursuant to subpoena in another district shall be initially taken to the nearest available magistrate to be held to answer in the district which issued the warrant. *See United States v. Janze,* No. C–89–004m–1 (M.D.Pa., Feb. 9, 1989). (Rule 40(e) governs proceedings concerning a person arrested in one district for failure to appear in another district: appear first before magistrate in district where arrested.) This same procedure should be followed for arrests pursuant to this section.

This provision does not place unconstitutional restraints on movement. This remedy

does not seek to return debtors from other jurisdictions (such as under Bankruptcy Rule 2005) and is only available under extraordinary circumstances where the debtor is intent upon hindering, delaying or defrauding the United States.

Section 3310 [*see 28 USC § 3206*]. Discharge

This section ensures that a third party, *e.g.*, an employer or other garnishee, who pays the United States pursuant to an execution or order is relieved from liability to pay the debtor for the amounts paid. This provision is included to assist such third parties in asserting a complete defense to any claim for property or payment made by the debtor after payment has been made to the United States. Although this section is found in Subchapter D of the Act, it is intended to apply generally to all third parties who pay the United States pursuant to an execution or order under the Act, including those issued under Subchapter B. *See* N.Y.Civ. Prac.L. & P. § 5209 (McKinney's 1978).

### SUBCHAPTER E [*compare 28 USC § 3014*]—EXEMPT PROPERTY

Section 3401 [*compare 28 USC § 3014*]. Exempt property

These exemptions are modeled after some of the exemptions in the Bankruptcy Code, 11 U.S.C. § 522. The exemptions are available to all natural persons to the extent they are appropriate. This schedule of exemptions also reflects state law provisions and has been the result of comments from the United States Attorneys' offices in the various districts and reflect their considered opinion on providing exemptions which are fair and take into consideration current needs of debtors.

It should be noted that there is a "homestead" type exemption with regard to real and personal property used as a residence; this would allow mobile homes and houseboats to qualify for exemption to the dollar limit. These exemptions will generally not apply to criminal or tax judgments for which

a special group of exemptions is established in 26 U.S.C. § 6334.

Section 3402 [*compare 28 USC § 3014*]. Limitations on exempt property

This section is intended to prevent the abuse and fraudulent use of these exemptions by the debtor in order to evade enforcement proceedings. A procedure is established by which the United States may challenge a claimed exemption and standards are provided for use by the court.

The ability of the United States to require a statement with regard to each exempt asset under section 3402(c) is intended to prevent blanket claims of exemption from obstructing the collection of debts due the United States. Mere assertion of an exemption does not by itself prevent seizure or sale of property; for that purpose, a judicial determination such as interim relief based on proper proof under sections 3205 or 3307 would be necessary. Similar procedures for challenging exemption claims are established in the Bankruptcy Code, 11 U.S.C. § 522(1), and Bankruptcy Rule 4003.

This section is not intended to be utilized by the United States in the course of litigation to circumvent or have the effect of circumventing the limitation on exempt property. The government should generally seek to satisfy a judgment in such a way as to minimize the adverse impact on the debtor and in a manner that will not unnecessarily disrupt the debtor's affairs. The debtor will normally be in a position to elect which property should be applied to the satisfaction of his debt and should be encouraged to do so. Unless the court determines that it is reasonably apparent that the exemption applies, the debtor will bear the burden of going forward.

### SUBCHAPTER F [see 28 USC ch 176, subch D]—FRAUDULENT TRANSFERS

Sections 3501 to 3509 [*compare 28 USC §§ 3301–3308*]. Fraudulent transfers

This subchapter is modeled on the Uniform Fraudulent Transfer Act. The Uniform Fraudulent Transfer Act has been adopted by many states. See, *e.g.*, Minn.Stat.Ann.

§ 513.41–51 (West Supp.1989); Cal.Civ.Code §§ 3439–3439.12 (West 1970 & 1989); Or. Rev.Stat. § 95.200–319 (1987); and Me.Rev. Stat.Ann. title 14, §§ 3571–3582 (1980 & Supp.1986). These provisions cover fraudulent transfers of both real and personal property. It has been adopted by the Bankruptcy Code (11 U.S.C. § 548) and applied to Federal debtors in a bankruptcy setting. The Act makes the same provisions applicable to Federal debtors in a non-bankruptcy setting.

The purpose of these provisions is to recover assets where the debtor has fraudulently transferred them to avoid application of the assets to the payment of the debt owed the United States. This remedy can be used both before and after judgment where appropriate. *See also* Fed.R.Civ.P. 18(b) (allowing suit on fraudulent transfer without first obtaining a money judgment).

### SUBCHAPTER G [*compare 28 USC § 3003(c)(9)* ]—PARTITION

Sections 3601 to 3605 [*compare 28 USC § 3003(c)(9).*] Partition

These sections provide for a partition of real or personal property, in kind or by sale, by the United States, as co-owner or claimant against other co-owners or claimants. This section will complement 28 U.S.C. § 1347, which provides for partition by tenants in common or joint tenants against the United States. This remedy may also be used if partition is determined to be allowed by state law as to co-owned property under section 3013 of this Act. *See* Tex.Civ.Prac. & Rem.Code § 23,991 (Vernon 1986), Fed. R.Civ.P. 53.

### SUBCHAPTER H [*compare 28 USC § 3003(c)(9)*]—FORECLOSURE OF SECURITY INTEREST

Section 3701 [*compare 28 USC § 3003(c)(9).*] United States foreclosures governed by Federal law

This section sets forth the intent of this Act to establish a standard for the treatment of Federal debtors in foreclosure actions. Under this section, the rights of the United States are governed by Federal statutes and regulations, Federal transaction documents and Federal common law. Some courts have erroneously concluded that only state statutory law provides for redemption rights and have ignored the common law equity of redemption as a proper source of the "federal common law." *See, e.g., United States v. Ellis,* 714 F.2d 953 (9th Cir.1983).

Section 3702 [*no 28 USC ch 176 counterpart* ]. Deficiency rights on Federally guaranteed or Insured Loans

This section deals specifically with the area of deficiencies in foreclosures and insures that any amount remaining due on the Federal guaranty after foreclosure and sale will constitute a debt to the United States. Recent lower Federal court decisions, *see, e.g., United States v. Vallejo,* 660 F.Supp. 535 (W.D.Wash.1987), have eroded government rights to recover on guarantees which seemed well recognized by the United States Supreme Court in *United States v. Shimer,* 367 U.S. 374,

481 (1961). This section will provide a clear statement of congressional intent in this area.

### TITLE II [*compare Federal Debt Collection Procedures Act subtit B 1990,*]—AMENDMENTS TO EXISTING LEGISLATION

*Introduction to Title II [compare Federal Debt Collection Procedures Act subtit B (1990) ]*

In creating this new procedural system, it is necessary to conform existing statutes which are inconsistent with the Act by repeal or amendment. These conforming changes occur primarily in title 28 of the United States Code.

To further aid the United States in its collection process, additional statutory amendments are necessary to remove other impediments to Federal collection. These amendments are made primarily in the Bankruptcy Code (title 11, United States Code) and the Criminal Code (title 18, United States Code). Special concerns regarding foreclosure cases are also addressed.

It is important that these additional changes be made to complement the new procedural process. The power of Congress to make laws in these areas is well established.

Section 201 [*no counterpart*]. Amendment to 11 U.S.C. § 505

This section has been amended by adding a provision which gives governmental units discretion in applying payments received in bankruptcy proceedings. This will clear up some confusion which has arisen in the case law with respect to whether the Internal Revenue Service can consider payments as "involuntary" and thus apply these payments in any order they deem appropriate. *See In Re Technical Knockout Graphics, Inc.*, 833 F.2d 797 (9th Cir.1987) (payments made by debtor after filing Chapter 11, but prior to plan continuation are "involuntary"); and *In The Matter of Ribs–R–Us, Inc.*, 828 F.2d 199 (3d Cir.1987) (*compare In re A & B Heating & Air Conditioning*, 823 F.2d 462 (11th Cir. 1987) (debtor may allocate post-petition taxes). This is necessary to prevent debtors, whose success in reorganization is doubtful, from allocating payments first to reduce tax liabilities (of which officers, directors or others might be held personally liable) (*e.g.,* 100 percent penalty on responsible officers for failure to pay over taxes from employees), and then upon failure of the reorganization plan, leave the remaining tax liabilities uncollectable. While the taxes lost through this loophole cannot be precisely quantified, this provision will clarify the law and result in substantial recoveries of unpaid taxes.

Section 202 [*no counterpart*]. Amendment of 11 U.S.C. § 523(a)

Under this section, debts arising from the violation of a statute, rule or regulation, civil or criminal, are not dischargeable in bankruptcy. Financial penalties imposed by other courts to punish and deter misconduct should not be invalidated by a bankruptcy court.

This section clarifies that criminal offenders may not use bankruptcy to escape their restitution obligations. The issue of whether criminal restitution is dischargeable was resolved in

part, in *Kelly v. Robinson,* 479 U.S. 36 (1986). However, the courts have continued to have difficulty with the status of some restitution claims in bankruptcy. *See In Re Johnson–Allen,* 871 F.2d 421 (3rd Cir.1989); and *In Re Heincy,* 858 F.2d 548 (9th Cir. 1988). This section will fully resolve the issue.

Other debts that arise from offenses, such as civil and criminal penalties and fines, will also be non-dischargeable under this section. This section makes clear that the bankruptcy laws are not intended to be a mechanism for evading the legitimate police powers of the government.

This section also provides that criminal appearance bonds and judgments arising from them are non-dischargeable. These debts arise when a criminal defendant who has been released on bail becomes a fugitive. *See, e.g.,* 18 U.S.C. § 3146.

Section 203. Amendment to 11 U.S.C. § 523(a)(8) [*see that section*]

This section adds to the list of non-dischargeable debts, obligations to repay educational funds received in the form of benefits (such as VA benefits), scholarships (such as medical service corps scholarships) and stipends. These obligations are often very sizeable and should receive the same treatment as a "student loan" with regard to restrictions on dischargeability in bankruptcy. *See U.S. Department of Health and Human Services v. Smith,* 807 F.2d 122 (8th Cir.1986).

The limitation period is extended on these claims from five to seven years in recognition of the lengthy processing and enforcement requirements.

Section 204(a) [*no counterpart*]. Amendment to 11 U.S.C. § 1129(a)(9)(C)

This section provides that "unassessed" tax claims must be paid within six years of the confirmation date. The Bankruptcy Code allows payment of certain taxes to be made over a six-year period measured from the date of assessment. Sometimes the taxes

have not been assessed as of the confirmation date. The Bankruptcy Code is currently silent on this issue. One bankruptcy court has ruled that unassessed taxes cannot be collected or paid even where the Internal Revenue Service has filed an otherwise valid proof of claim. *See In Re Flanigan's Enterprises, Inc.,* 75 Bankr. 446 (S.D.Fla.1987). This amendment specifically overrules this holding. Without this amendment, substantial tax claims will be lost. The amendment will clarify the law on this point.

Section 204(b) [*no counterpart*]. Amendment to 11 U.S.C. § 1129

This section adds the requirement that tax claims shall be paid interest at the statutory rate applicable to unpaid taxes, not a "market" or some other non-statutory rate. The amendment is needed in order to clarify current law. *Compare United States v. Neal Pharmacal Co.,* 789 F.2d 1283 (8th Cir.1986), and *In Re Camino Real Landscape Maintenance Contractors, Inc.,* 818 F.2d 1509 (9th Cir.1987).

Section 205. Amendment to 18 U.S.C. § 3142(c)(1)(B)(xi) [*see that section*]

This amendment requires the court to demand sufficient information regarding the ownership and value of property before the court accepts it as collateral for the bond. This is to ensure that the proceeds from the sale of property securing a bail bond will be adequate to pay the resulting obligation in the event of default and to be certain that the property pledged either belongs to the debtor or is offered for collateral with the consent of the rightful owner. Judicial scrutiny of the ownership and value of the property is intended to enhance the defendant's likelihood of meeting the terms and conditions of his release from detention.

Section 206. Amendment to 18 U.S.C. § 3142(c)(1)(B)(xii) [*see that section*]

This amendment requires the court to deal with "sureties" in the same manner as it does defendants under Section 205 of this Act. It is anticipated that this will make clear to potential sureties the seriousness of their undertaking.

Section 207. Amendment to 18 U.S.C. § 3142(g)(4) [*see that section*]

This section corrects a typographical error in Section 3142(g)(4).

Section 208. Amendment to 18 U.S.C. § 3552(d) [*see that section*]

This section is to make clear that information contained in a presentence report shall be given to the attorney for the government to use in the collection of any assessment, criminal fine, forfeiture or restitution imposed. The presentence report contains important information about the debtor's assets, employment and ties to the community. Financial statements given by the debtor to the prosecution to solicit information necessary for collection purposes routinely results in inadequate, incorrect and false information being supplied by the debtor. On the other hand, the presentence report is prepared by the probation office of the courts and is given to the court to provide guidance in sentencing and imposition of fines. The defendant is well motivated to provide as much information as possible to the court to show that he is a productive member of society. Information in a presentence report is far more reliable than that provided to the prosecutor in a financial statement. The presentence report should be available to the government to reach the assets revealed for the satisfaction of fines or other criminal debts owed to the government. At best, a financial statement given to the prosecutor is unnecessarily duplicative of the information in the presentence report.

Section 209 [*no counterpart*]. Amendment to 18 U.S.C. § 3565(a)

This section places the judicial enforcement of criminal judgments under the provisions of this Act, except that exemptions for salaries, wages and income will be governed by 26 U.S.C. § 633(d). Section 3565 was replaced by 18 U.S.C. § 3613

on November 1, 1987, and section 211 of the Act modifies that section.

Section 210 [*no counterpart*]. Amendment to 18 U.S.C. § 3579(f)(4)

This section limits the role of the Attorney General as an intermediary to only those cases where the recipient of restitution is in fear of having the defendant know their location or of having any contact with the defendant. This amendment is made to the Criminal Fine Enforcement Act of 1984 which became effective in October 1984.

Section 211 [*no counterpart*]. Amendment to 18 U.S.C. § 3613

This section provides that criminal judgments can be judicially enforced under the provisions of this Act. Proceeding under the Act is an alternative to using the administrative collection procedures, which are similar to those of the Internal Revenue Service that are now available for collection of criminal judgments pursuant to the Sentencing Reform Act and the Criminal Fine Enforcement Act.

Section 212 [*no counterpart*]. Amendment to 18 U.S.C. § 3663(f)(4)

This section limits the role of the Attorney General as an intermediary in only those cases where the recipient of restitution is in fear of contact with the defendant. This amendment is made to the Sentencing Reform Act provisions that became effective November 1, 1987.

Section 213 [*no counterpart*]. Amendment to 28 U.S.C. § 524

This section establishes the Debt Collection Fund into which a five percent portion of the moneys collected by the Department of Justice divisions and the United States Attorneys is placed for later use for collection-related costs and expenses. In the event money is realized from the sale of property, the five percent shall be calculated on the net proceeds of the sale of the real or personal property. The five percent shall be deposited into the Fund as payments are received. When a debt is paid in full, the amount deposited shall not exceed five percent of the amount of the judgment, plus post-judgment interest and costs, or when no judgment has been entered, the prejudgment principal plus interest, administrative costs, fees, and court costs. The moneys for the Fund will come from only those cases referred by the agencies for litigation and enforced collection, whether by affirmative or defensive litigation. It will include moneys recovered through the efforts of Special Assistant United States Attorneys who work under the supervision and at the direction of the United States Attorneys. The Fund will receive no moneys from cases litigated or otherwise resolved by the agencies when they are not referred to the Department of Justice for litigation.

If amounts collected are of a nature that they are required by law to be deposited into some special fund (*e.g.*, the Crime Victims Fund: Lacy Act Fund; or Postal Service Fund, *etc.*), no

part of those amounts shall go to the Attorney General's Debt Collection Fund.

This proposed Fund is modeled on the existing Asset Forfeiture Fund. The Fund would operate in accordance with appropriation legislation and is not "off budget."

The Fund would make needed moneys available for debt collection work, thereby alleviating the necessity of the United States Attorney having to choose between debt collection work and other litigating functions, such as prosecution of drug cases in the allocation of resources. Often, the use of an attorney in debt collections is viewed as a loss of manpower to other high profile types of enforcement work.

The Fund will make available money for training of debt collection personnel. Debt Collection Units are often staffed by lower-graded, untrained personnel. The training of these debt collection workers is critical to their effectiveness. Unfortunately, debt collection training has been a very low priority and is the first training area to be eliminated when cuts are necessary.

Having moneys available to pay for the ancillary costs of debt collection work will remove the economic disincentives for aggressive litigation and enforcement. In the past, expenditures for fundamental debt collection needs, such as credit bureau reports,

skip-tracing services and filing fees, have been cut from the litigating budgets of the United States Attorneys, in favor of expenditures for other work.

Under the Act, the United States will be able to utilize private process servers. The Fund will assure that lack of resources for service, the first step in the litigative process, is not an impediment to aggressive pursuit of Federal defaulters. Currently, the lack of resources of the U.S. Marshals Service, the lack of authority to contract for private process servers and the lack of funds to pay for services have thwarted attempts to promptly sue Federal debtors.

It is believed that the Fund will provide two types of incentives to government components which will improve the Federal debt collection. First, the Fund will provide the incentive to the referring agencies to work harder to prevent delinquency at the front end of the credit cycle. Agencies will be motivated to prevent bad loans if they must automatically pay five percent of any amounts collected on any case referred for litigation and enforced collection by the Department of Justice. A portion of the five percent will be paid by delinquent debtors from the administrative costs that will be assessable for claims processing and enforced collection by the Department of Justice.

Second, it is intended that the implementing regulations for the Fund will provide for pro rata availability of the moneys for each United States Attorney's office and each litigation division within the Department, based upon the amounts collected by each component. The Fund will thereby serve to create an incentive

for maintaining strong debt collection units, and the tendency to give debt collection work the lowest priority in these offices can thereby be overcome.

It is believed that the Fund will provide the necessary moneys to develop a more aggressive and effective debt collection program. It is anticipated that the additional moneys recovered will more than offset any expenditures for the Fund. The Fund represents the best hope for breaking the "pennywise and pound foolish" cycle of debt collection enforcement.

Section 214. Amendment to 28 U.S.C. § 550 [*see that section*]

Often the United States marshal has limited resources with which to meet the demands for service of process; a particular office may have too few deputies or there may be a large influx of new cases filed, such as when many student loans were filed under a nationwide initiative. To help the United States Attorneys meet their needs in proceeding with litigation, this section authorizes them to overcome problems in obtaining service by hiring private process servers as the need arises.

Section 215 [*no counterpart*]. Amendment to 28 U.S.C. § 1961(c)(1)

This section prevents a conflict from arising between 28 U.S.C. § 1961 and the provisions of this Act regarding interest on judgments obtained by the United States.

Section 216. Amendment to 28 U.S.C. § 1962 [*see that section*]

This section prevents a conflict from arising between 28 U.S.C. § 1962 and the provisions of this Act regarding judgment liens obtained by the United States.

Section 217. Amendment to 28 U.S.C. § 1963 [*see that section*]

This section makes the registration of a judgment of the United States in another district optional. Under section 3003 of the Act there is nationwide enforcement of a judgment with respect to all remedies. Registration pursuant to 28 U.S.C. § 1963 is unnecessary, but may be employed by the United States at its election.

Section 218. Amendment to 28 U.S.C., Chapter 129 [*see new 28 USC § 2044*]

This section provides a simple procedure by which the United States can obtain the funds that the defendant deposits with the court, to secure his bail bond so that the cash can be applied to the payment of the fine imposed. Under this section, the court is restricted somewhat in allowing the release of the funds, once they are deposited with

the clerk, especially after conviction. This is to prevent a defendant who anticipates being fined from removing the cash from the reach of the United States. Presently there is no specific Federal statutory procedure to apply bond money to the payment of fine. This was recognized in *United States v. Powell,* 639 F.2d 224 (5th Cir.1981); that court suggested the United States was required to proceed under 18 U.S.C. § 3565 and Fed. R.Civ.P. 69 to recover the money,

applying Texas garnishment procedures which did not allow the procedure to be used against funds held in custodia legis. This would lead to the conclusion that if the state garnishment law allowed garnishment of funds in custodia legis, then this could be done in Federal Court. This is not true, as it is doubtful that the general provisions of 18 U.S.C. § 3565 and Rule 69 would be interpreted as an adequate waiver of sovereign immunity. See *Buchanan v. Alexander,* 45 U.S. (4 How.) 20 (1846). Consequently, it is necessary to have some procedure clearly established so that it is not necessary for the sovereign to sue itself to accomplish this result.

Section 219. Amendment to 28 U.S.C. § 2410(c) [*see that section*]

In many instances, the government's interests at a foreclosure sale cannot presently be protected unless the creditor agency has cash to bid. This section will ensure that where the United States believes it to be in its best interest, it can make a bid up to the amount of its lien without cash.

Section 220. Repeal of 28 U.S.C. § 2413 [*no counterpart*]

This section, which deals with executions in favor of the United States, repeals 28 U.S.C. § 2413. Under the provisions of section 3003 of the Act, there exists nationwide enforcement and the provision in title 28 of the United States Code is unnecessary.

## V. COST ESTIMATE

The Act is not expected to require any significant additional appropriations. Additional costs will be incurred for training judicial and executive branch personnel, production and publication of official forms and related administrative expenses, and litigation costs associated with increased debt collection efforts. The primary expense created by the Act, the Department of Justice Debt Collection Fund created by section 213, is funded from debts collected and therefore will have no net budget effect with the exception of an appropriation of money requested for Fiscal Year 1990.

## VI. REGULATORY IMPACT STATEMENT

In compliance with paragraph 11(b), Rule XXVI of the Standing Rules of the Senate, the Committee, after due consideration, concluded that this bill will not have any regulatory impact.

## VII. CHANGES TO EXISTING LAW

The Act changes existing law in three respects. First, the Act substitutes specific substantive and procedural provisions for the state law provisions presently used by the United States pursuant to Federal Rules of Civil Procedure 64 and 69. Second,

the Act amends particular provisions of the United States Code related to bankruptcy, criminal appearance bonds, victim restitution rights, application of bond funds to pay fines, providing presentence reports to the United States Attorney, providing for private process service, lien creation, interest on judgments, and judgment registration. Third, the Act creates a fund, financed out of debt recoveries, to further enhance the government's debt collection efforts.