Bertram Harnett, J.
Several motions in this case present important issues of computing interest on verdicts and allowable enforcement procedures.
A jury trial resulted in a verdict on March 28, 1972 for $15,500 in favor of Boger Yamamoto for injuries suffered in an assault committed by defendant Kevin Costello. $1,800 was awarded to Mr. Yamamoto’s father for medical expenditures. .Judgment was entered on October 6, 1972, with interest, costs and disbursements.
Plaintiffs move to correct spelling and interest computation errors in the judgment and for execution by directed install-, ment payments.
*593 A. JUDGMENT CORRECTION
Plaintiffs’ motion to amend the judgment by substituting the correct name “ Yamamoto ” for the erroneous “ Yamaoto ” wherever it appears is unopposed and is granted. Upon filing the amended judgment and a copy of this order with the Clerk of Nassau County, the original judgment will be modified and stands corrected mmc pro tunc.
B. INTEREST RATE
All parties now agree that the interest figure included by the Yamamotos in their judgment was erroneously computed at, effectively, 12% per annum. Yet, there is still disagreement as to the applicable rate.
The plaintiffs claim that 7%% is allowed until September 1, 1972 when the Legislature changed the “ legal rate ” allowance to 6%, and then 6% thereafter.
The defendant claims a continuous 6% rate forward from the March, 1972 verdict date.
1. STATUTORY INTEREST
Interest allowable in a judgment may derive from either ■ a statute or the relationship between the parties. “As a general rule, interest is allowed only when provided for by contract, express or implied, or by statute, or when, as damages, it becomes due after a default by the person liable for payment.” (New York State Thruway Auth. v. Hurd, 31 A D 2d 563, 564,. affd. 25 N Y 2d 150.) Here, as with most personal injury recoveries, there was no prior agreement between the parties respecting interest.
The statutory scheme, however, allows for interest to run in three distinct intervals: preverdict, between verdict and judgment, and post-judgment. Preverdict statutory recovery of interest is not available in personal injury cases. (CPLR 5001.) The recovery of interest “ upon the total sum awarded * * * from the date the verdict was rendered or the report or decision was made to the date of entry of final judgment ” is mandatory and “ shall be computed by the clerk of the court and included in the judgment ”. (CPLR 5002.) All money judgments bear interest after and from the date of entry. (CPLR 5003.)
In all such instances, the current rate is prescribed statutorily in CPLR 5004, which now provides: “Interest shall be at the rate of six per centum per annum, except where otherwise provided by statute ”, However, immediately before Sep *594 tember 1, 1972 the interest was by statute computed at the “ legal rate ”.
a. LEGISLATIVE HISTORY
The present rate of interest came by way of recent legislative amendment after considerable controversy over the meaning of the prior statute. The old CPLB 5004 read identically with the present except that “ legal rate ” was written where the phrase “ rate of six per centum per annum ” now appears.
Before 1968, the “legal rate ” was in fact 6% as set by former section 370 of the General Business Law and its successor, subdivision 1 of section 5-501 of the General Obligations Law. Subdivision 1 of section 5-501 was amended in 1968 to give the Banking Board of the State power to set the legal interest rate (L. 1968, ch. 349, § 1) and the board first set it at 7%% and then at 7%%. (3 NYCBB 4.1.) Courts varied in deciding which rate applied to judgments, 6% or the bank rate. (See McKinney’s Cons. Laws of N. Y., Book 7B, CPLB 5004, Siegel, 1970 Supplementary Practice Commentary ; Murphy v. Stirling, 66 Misc 2d 105, 106-107.) The prevailing authority found the higher bank rate applicable. (Rachlin & Co. v. Tra-Mar, Inc., 33 A D 2d 370.)
The Legislature then acted again. On May 22, 1972, chapter 358 of the Laws of 1972 was approved, effective September 1, 1972, changing “ legal rate ” to “ six per centum per annum ”. According to the Law Bevision Commission, this was designed “ to set a fixed interest rate on judgments, independent of the usury provisions of General Obligations Law § 5-501 ”. (L. 1972, ch. 358.)
b. INTEREST RUNS FROM VERDICT
Mr. Yamamoto’s verdict came down in March, 1972, during the “legal rate” ténure and before the September 1 change to the 6% rate, but the judgment upon it was not entered until afterwards in October.
First then, we must ascertain what da-te determines the applicable rate of interest. The verdict itself is a duly recorded and judicially originated occurrence representing peer finding of liability and moneys owed on the underlying tort claim. While not appealable or externally operative until the judgment incorporating it is entered, nonetheless it starts the interest clock running. (See Ariola v. Petro Trucking Corp., 50 Misc 2d 216.) Unlike the judgment entry date, it is “ fixed ”, not readily manipulatable by either party for possible interest *595 rate computation advantage.' (See Beyer v. Murray, 33 A D 2d 246; Trimboli v. Scarpaci Funeral Home, 37 A D 2d 386.)
Interest is simply related to time. As time is consumed between verdict date and judgment entry date, the then prevailing rate should apply as written. (Cf. CPLR 3219; 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5002.03.)
The history of interest computation shows fragmented time periods ánd different interest rates have not been unusual. (See City of Buffalo v. Clement Co., 34 A D 2d 24, 34; Stull v. Joseph Feld, Inc., 34 A D 2d 655.)
Interest on personal injury litigative findings derives its vitality at the point of verdict. The later entry of judgment goes purely to procedure and the formality of payment. (Cf. CPLR 5002.)
2. THE HEW RATE retroactive?
The application of the amended CPLR 5004, dealing with rate, is an open question, although the First Department in Rachlin & Co. v. Tra-Mar, Inc. (33 A D 2d 370, supra), has given some indication that interest will be computed at the various rates in effect .during the periods in which interest could properly be charged. (Cf. 5 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 5004.01.)
Nothing iii the statute itself, or commentaries upon the amendment, indicates that the newly prescribed rate was meant to apply retroactively to a time- period before September. (Cf. N. Y. Legis. Doc., 1971, No. 65[0]; N. Y. Legis. Doc., 1972, No. 65[C].)
Generally, a statute is presumed and construed as prospec-. . tive, unless its language expressly or impliedly requires retroactive construction. (Matter of Mulligan v. Murphy, 14 N Y 2d 223, 226; Matter of Graziano v. Donohue, 33 A D 2d 578; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, §§ 51, 52.) This principle has been held applicable in particular to statutory amendments changing the rate of interest on debts and obligations. (People ex rel. Emigrant Ind. Sav. Bank v. Sexton, 259 App. Div. 566, 570, affd. 284 N. Y. 57.)
Here, the court believes that a prospective sense inheres in the statute, meaning that from now on the rate of interest will not vary as before, but will be “ fixed
Consider that during the split interest periods of the ‘ ‘ legal rate ” statute, the courts held that the rates were prospective when they could have made them retroactive by the arguments advanced by the defendant here. The charged bank rates were *596 given prospective effect, often resulting in the seriatim application of three different rates, perhaps in recognition of the fairness of not altering the amount of interest previously accrued. In this sense, the obligee winning in court has a vested right in current interest. (See O’Brien v. Young, 95 N. Y. 428, 432.) The legislative purpose of setting one “fixed” rate for easier administration is not substantially compromised by this interpretation and in time virtually all clerical computation will entail only the 6% figure (unless changed again by the Legislature).
Moreover, retroactive imposition of the 6% rate as a substitute for the prior 7%% figure would bring a windfall to the judgment debtor who has delayed satisfying his outstanding obligation, a fortuitous reward in the form of a lowered interest rate for being delinquent. (See People ex rel. Emigrant Ind. Sav. Bank v. Sexton, 284 N. Y. 57, 62, supra; Rachlin & Co. v. Tra-Mar, Inc., 33 A D 2d 370, supra.)
Accordingly, interest here is computed at 7%% from March 28, 1972 to September 1, 1972, and at 6% thereafter to October 6, 1972.
The corrected judgment when filed as provided above shall include interest allowances of $561.43 for plaintiff Roger Yamamoto and $65.25 for plaintiff Thomas Yamamoto. For correction of a relatively minor defect such as interest miseomputation, the judgment need not be vacated as defendant requests, but may merely be corrected nunc pro tunc. (CPLR 5019, subd. [a]; see Spatz v. Pulensky, 267 App. Div. 1031.)
C. EXECUTION BY INSTALLMENT PAYMENTS
Finally, plaintiffs seek to recover by installment payment direction, a faster gradual payment towards the outstanding judgment than a 10% income execution would allow.
Mr. Costello is a stockbroker earning gross about $22,000 annually, including $7,000 in commissions. He is 29 years old, unmarried and without dependents and has a residence with his parent^ in Great Neck, although he had maintained a flat in Manhattan during the now terminated Long Island Railroad strike of 1972. No other executions upon his income, nor any imminent outstanding obligations on his behalf are indicated.
CPLR 5226 provides: “'Upon motion of the judgment creditor, upon notice to the judgment debtor, where it is shown that the judgment debtor is receiving or will receive money from any source * * * the court shall order that the judgment debtor make specified installment payments to the judg *597 ment creditor * * * In fixing the amount of the payments, the court shall take into consideration the reasonable requirements of the judgment debtor and his dependents, any payments required to be made by him * * * the amount due on the judgment, and the amount being or to be received
It has been said that “ one of [the statute’s] prime uses is in that situation * * * where it appears that the judgment debtor can afford more than the 10% to which the income execution is limited”. (McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 5226, Siegel, 1964 Supplementary Practice Commentary.) Such use is wholly discretionary, resting as it does upon the equitable factors cited. (Binder v. Schenk, 30 A D 2d 596; Uni-Serv Corp. v. Linker, 62 Misc 2d 861.) The fact that an income execution (CPLR 5231) has not been employed as yet does not bar this application, as nothing in the statute makes it a prerequisite to an installment payment application. Reasonably read, the statute merely requires a comparison between an income execution, if known or ascertainable, and a feasible installment order.
There is little doubt that Mr. Costello’s income exceeds his reasonable needs by more than 10% of his gross income even including commissions, or $42 per week. His net weekly income is about $260. His reasonable living expenses come to less than $90 per week, including food, clothing, car maintenance, commutation, and incidentals, but not including any dependency or loan obligations outside of the balance of a legal fee incurred in this proceeding. A monetary shelter expense is not cognizable, since with the railroad strike now over, Mr. Costello can live with his parents as he did before the strike, and the Manhattan apartment rental is unnecessary. When properly pared down, his essential needs are not overly high. The expenses claimed for dating, credit card expense for business entertaining, membership in the New York Athletic Club, a golf club, and the Wine and Food Society, may be perfectly acceptable undertakings, but in this context are clearly not living necessaries falling in priority ahead of prompt, albeit gradual, payment of the outstanding judgment.
The $17,300 verditit is a serious and urgent obligation. It represents a jury finding of recompense for medical expenses, conscious pain and suffering resulting from grave injuries suffered when Mr. Costello , hit Roger Yamamoto in the face with a glass bottle. Plaintiffs need not demonstrate their abject poverty to establish the need for expeditious payment of this sum.
*598 Accordingly, plaintiffs’ application for an order directing installment payments is granted. Under all the circumstances, the court believes that Mr. Costello’s, available income allows for an installment payment of $150 every two weeks,' which shall be paid every other Monday to plaintiffs, or their attorney, beginning with the first Monday after entry of the order made herein.