**The CADLE COMPANY,**
**Plaintiff–Appellee,**

v.

**Miriam NEWHOUSE, Defendant–**
**Appellant.**

No. 00–9569.

United States Court of Appeals,
Second Circuit.

Oct. 11, 2001.

Stephen Vlock, New York, NY, for plaintiff-appellee.

Edward Rubin, New York, NY, for defendant-appellant.

Present CABRANES, STRAUB and KATZMANN, Circuit Judges.

## SUMMARY ORDER

AFTER ARGUMENT AND UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the District Court is hereby VACATED and the case REMANDED for further findings consistent with this order.

Defendant–Appellant Miriam Newhouse appeals from a November 15, 2000 Opinion and Order of the United States District Court for the Southern District of New

York (Naomi Reice Buchwald, *Judge*) granting summary judgment in favor of Plaintiff–Appellee The Cadle Company ("Cadle") and the resulting judgment entered January 3, 2001 awarding Cadle a total sum of $3,493,813.83. The District Court found that certain conveyances from Mademoiselle Knitwear, Inc. ("Mademoiselle"), made at the behest of Mrs. Newhouse's husband, Shraga Newhouse, were both actually and constructively fraudulent under Article 10 of the New York Debtor and Creditor Law ("DCL") §§ 276 and 273, respectively. Because we conclude that the District Court failed to apply CPLR § 5205(d)(2), and because the District Court awarded attorneys' fees without specifically finding that Mrs. Newhouse was aware of and participated in the fraud, we vacate the judgment and remand the case to the District Court for further findings.

## FACTUAL AND PROCEDURAL BACKGROUND

The essential facts of this case were stipulated to by the parties. Shraga and Miriam Newhouse were married on November 11, 1970 and remained married through the death of Mr. Newhouse on May 31, 1998. Together they had ten children. Throughout the relevant time period, Mr. Newhouse was the chief executive officer and majority shareholder of Mademoiselle and Mrs. Newhouse was never employed. From 1992 through 1998, Mr. Newhouse had numerous debts and judgments against him; in 1992, he was over $2 million in debt, and by August 1994, his debt had risen to over $13 million. These debts were all against Mr. Newhouse personally. Mademoiselle filed petitions in bankruptcy on March 25, 1991 and again on April 18, 1996 and is now defunct.

On November 18, 1992, a checking account was opened at Israel Discount Bank of New York ("IDB") solely in the name of Miriam Newhouse, although Mr. Newhouse was given authority to sign checks and power of attorney over the account. From November 1992 through May 1998, Mr. Newhouse caused his earnings from Mademoiselle to be deposited into the IDB account. From November 1992 through July 1996 ("the analysis period") $1,738,178.44 was deposited in the IDB account; by May 1998 the total amounted to $2,720,745.58. These deposits consisted solely of Mr. Newhouse's Mademoiselle earnings; no other deposits were made into the IDB account during this time period.

Both Shraga and Miriam Newhouse wrote checks, withdrew funds in cash and paid bills for their own personal expenses from the IDB account. During the analysis period, Mrs. Newhouse signed at least 4,109 checks drawn on the IDB account in the aggregate amount of at least $1,094,857.72. During the same period, Mr. Newhouse signed at least 573 checks drawn on the IDB account in the aggregate amount of at least $544,854.55. A large portion of the checks constituted expenditures for food, clothing, mortgage, tuition and charity. During the analysis period, IDB charged the IDB account for insufficient funds on approximately 1584 checks, charging $26,407.11 in fees.

In January 1991, Mr. Newhouse guaranteed a loan in the principal sum of $2,000,000.00 in favor of First New York Bank for Business, which was assigned to Cadle in July 1995. Upon default in payment, Cadle commenced an action against Mr. Newhouse in New York Supreme Court and on July 24, 1996 won a judgment in the amount of $2,467,883.37. Cadle then filed the instant suit in August 1998 against Mrs. Newhouse seeking to

obtain the funds transferred to the IDB account in satisfaction of its 1996 judgment against Mr. Newhouse. After stipulating to the above facts, both parties moved for summary judgment.

The District Court granted summary judgment in favor of Cadle, finding that the transfers to the IDB account were actually and constructively fraudulent. Judgment was entered on January 3, 2001, awarding Cadle a principal sum of $2,467,883.37, together with interest amounting to $966,936.98, attorneys' fees of $48,126.50 and expenses of $10,866.98, for a total sum of $3,493,813.83. This timely appeal followed.

## DISCUSSION

■ "On appeal from a grant of summary judgment we review the record *de novo* to determine whether genuine issues of material fact exist requiring a trial." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir.2001). "A grant of summary judgment will be affirmed only if 'there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' " *Id.* (quoting Fed.R.Civ.P. 56(c)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Moreover, "[w]hile the issue of intent is normally a question of fact under New York law, we will review the district court's ultimate conclusion that the conveyance was fraudulent under section 276 *de novo* as an issue involving the application of law to fact." *United States v. McCombs*, 30 F.3d 310, 328 (2d Cir.1994).

■ As an initial matter, we agree with the District Court's findings of actual and constructive fraud on the part of Mr. Newhouse. Cadle demonstrated the presence of nearly all the "badges of fraud" relevant to a fraudulent intent inquiry under DCL § 276:(1) Mr. and Mrs. Newhouse were

husband and wife; (2) Mr. Newhouse retained "unfettered" control over the IDB account; (3) Mr. Newhouse was indebted at the time he made the transfers, and was aware of those debts; (4) there was no consideration in return for the transfer from Mademoiselle to Mrs. Newhouse; and (5) it was irregular for Mr. Newhouse to extract his earnings from his corporation via "lump-sum transfers" to Mrs. Newhouse's IDB account. As stated by the District Court, "[t]he undisputed presence of these facts, taken *in toto*, mandates a summary judgment of actual fraudulent intent." *Cadle Co. v. Newhouse*, No. 98–5945, 2000 WL 1721131, at *6 (S.D.N.Y. Nov.16, 2000). Further, because the transfers to Mrs. Newhouse were made for no consideration, and because Mademoiselle was insolvent at the time of the transfers, the transfers were properly found to be constructively fraudulent under DCL § 273. Finally, substantially for the reasons stated in the District Court order, we reject Mrs. Newhouse's argument that the ongoing support obligation between a husband and wife creates a debtor-creditor relationship absent a separation or divorce proceeding, as well as the argument that Cadle cannot reach the funds in the IDB account because Cadle is not a creditor of the transferor, Mademoiselle.

A finding of actual or constructive fraudulent intent on the part of Mr. Newhouse, however, does not end our inquiry—nor should it have ended the District Court's analysis. New York Civil Practice Law and Rules ("CPLR") § 5205(d)(2) provides that a judgment creditor is entitled to reach only the greater of 10% of the debtor's earnings or the amount of earnings exceeding that required for the reasonable living expenses of the debtor and the debtor's dependents. The statute provides, in pertinent part:

The following personal property is exempt from application to the satisfaction of a money judgment, except such part as a court determines to be unnecessary for the reasonable requirements of the judgment debtor and his dependents:

. . . .

ninety per cent [sic] of the earnings of the judgment debtor for his personal services rendered within sixty days before, and at any time after, an income execution is delivered to the sheriff or a motion is made to secure the application of the judgment debtor's earnings to the satisfaction of the judgment. . . .

N.Y. C.P.L.R. § 5205(d)(2) (McKinney 2001). This provision is intended to shield that portion of a debtor's income that is used to pay for the reasonable living expenses of the debtor's family. As noted in *In re Portnoy*, 201 B.R. 685, 693 (Bankr. S.D.N.Y.1996), "each of the cases interpreting [§ 5205] holds, in substance, that to the extent the debtor's transferred salary is used for necessary support of the debtor or the debtor's dependents, the transfer of such funds cannot be considered a fraud on creditors." Section 5205 makes clear however, that while a debtor may exempt up to 90% of his earnings, a court may choose to protect a lesser amount to the extent that the debtor's earnings exceed that required to pay for reasonable living expenses. Therefore, New York courts have, in their discretion, awarded judgment creditors more than 10% of the judgment debtor's earnings. *See Nutmeg Fin. Servs., Inc. v. Richstone*, 186 A.D.2d 58, 587 N.Y.S.2d 653, 653–54 (N.Y.App.Div.1992); *Yamamoto v. Costello*, 73 Misc.2d 592, 342 N.Y.S.2d 33, 38–39 (N.Y.Sup.Ct.1973). The "appropriate inquiry is the quantum necessary for the debtor's and his family's reasonable requirements for support, keeping in mind that no man should be permitted to live at the same time in luxury and in debt." *Portnoy*, 201 B.R. at 693 (internal quotation marks and citations omitted).

■ Cadle urges that § 5205 is applicable only when an income execution has been applied to the debtor's earnings. Because no income execution is in effect in the instant case, Cadle argues that § 5205 is inapposite. A review of New York case law, however, supports the application of the § 5205 exemption even when no income execution is in effect. For example, in *Power v. Loonam*, 49 Misc.2d 127, 266 N.Y.S.2d 865, 868 (N.Y.Sup.Ct.1966), the judgment creditor sought funds deposited in a savings account held by the debtor's wife. Despite the fact that no income execution was in effect, the court applied § 5205 and shielded the funds because they represented the primary source of the family's support. Similarly, in *Morris Plan Industrial Bank of New York v. Gunning*, 295 N.Y. 324, 67 N.E.2d 510, 511 (1946) the New York Court of Appeals explicitly noted that "[t]his case does not [ ] directly involve a garnishee execution," but then applied the predecessor to § 5205(d) to protect 90% of the debtor's earnings. These cases make clear that § 5205(d)(2) is not limited to situations where an income execution is in effect, but may be applied more broadly to situations such as the instant case.

■ In addition, New York courts have repeatedly stated that a judgment creditor's right to satisfy a judgment cannot be enhanced by virtue of a fraudulent transfer. *See, e.g., Mfrs. & Traders Trust Co. v. Lauer's Furniture Acquisition, Inc.*, 226 A.D.2d 1056, 641 N.Y.S.2d 947, 948 (N.Y.App.Div.1996) ("As a general rule, the creditor's remedy in a fraudulent conveyance action is limited to reaching the property which would have been available to satisfy the judgment had there been no conveyance." (internal quotation marks

omitted)); *Marine Midland Bank v. Mur-koff*, 120 A.D.2d 122, 508 N.Y.S. 17, 24 (1986) ("[T]he defrauded creditor is not entitled to an enhancement of position beyond what it was before the fraud....."). In other words, had Cadle attempted to garnish the wages of Mr. Newhouse, it would only have been entitled to 10% or the amount exceeding the reasonable living expenses of Mr. Newhouse's dependents. *See* CPLR § 5205(d)(2). Cadle would similarly have been limited had the funds been placed in an account under Mr. Newhouse's name. *See Colonial Disc. Co., Inc., v. Wilhelm*, 40 N.Y.S.2d 298, 298–99 (City Ct.1943) ("The exemption belonging to the earnings of the judgment-debtor was not lost by the deposit of his salary in a bank account.... There is no merit in the contention of the judgment-creditor that the deposit destroyed the exemption."); *N.Y. Post Corp. v. Newman*, 69 Misc.2d 300, 329 N.Y.S.2d 942 (N.Y.Co.Ct. 1971); *In re Maidman*, 141 B.R. 571, 573 (Bankr.S.D.N.Y.1992). Therefore, the fact that the earnings were transferred to his wife does not entitle Cadle to reach a greater amount.

Here, there is no question that the funds which Cadle seeks represent Mr. Newhouse's earnings—Cadle expressly stipulated to this fact. Moreover, the parties stipulated that a large portion of the funds were used for basic living expenses such as food (not less than $141,754.64), clothing (not less than $221,777.21), mortgage (not less than $142,000) and tuition (not less than $103,267.95). Under such circumstances, application of the § 5205 exemption is appropriate to protect those funds that were used for the living expenses of

the Newhouse family. We therefore vacate the judgment against Mrs. Newhouse and remand the case so that the District Court may determine the amount of Mr. Newhouse's earnings that were used for reasonable living expenses.[1] In doing so, we note that New York courts have placed the burden of proving that fraudulently transferred funds were used for reasonable living expenses on the debtor or transferee. *See Camphill Special Sch., Inc. v. Prentice*, 126 Misc.2d 707, 483 N.Y.S.2d 888, 889 (N.Y.Sup.1984) ("The burden of establishing necessity or reasonable requirements is apparently on the judgment debtor." (citing *Dickens v. Dir. of Fin. of the City of N.Y.*, 45 Misc.2d 882, 258 N.Y.S.2d 211 (Sup.Ct.1965)).

We also remand so that the District Court may make further findings specifically in regard to Mrs. Newhouse's fraudulent intent. New York law allows attorneys' fees to be awarded in an action to set aside a conveyance "where such conveyance is found to have been made by the debtor and *received by the transferee with actual intent* ....." DCL § 276–a (McKinney 2001) (emphasis added). In *Carey v. Crescenzi*, 923 F.2d 18, 20 (2d Cir.1991), we held that "under § 276–a attorney's fees may not be awarded against a defendant, who is a grantee of a fraudulent conveyance, without a specific finding that he was aware of and participated in the actual fraud." In *Carey*, we held that the facts found by the district court supported a finding of actual intent to defraud against the transferor, but not against the transferees, who were the transferor's sons and also named defendants. *Id.* at

---

**1.** The District Court concluded that application of § 5205 was too speculative, stating that "there is simply no way for this Court to quantify retrospectively the amounts that the Bankruptcy Court would have permitted Shraga Newhouse to withdraw in salary or the percentage of his income his creditors would have been allowed to garnish." Difficult though it may be, determining the appropriate amount to which Cadle is entitled is preferable to a windfall to Cadle at the expense of the Newhouse family.

21. We stated that "[a]t the least, before charging [the transferees] personally with attorneys' fees, there should be a finding of their actual knowledge of the circumstances that render these conveyances fraudulent." *Id.*

■ Here, the District Court's findings of actual fraudulent intent were based on the conduct and knowledge of Mr. Newhouse; no findings specific to Mrs. Newhouse were articulated in the District Court's order. Mrs. Newhouse contends that she knew little about finances and had no knowledge of the nature or source of the funds in the IDB account. Moreover, she argues that because the funds in the account were the earnings of her husband and used for legitimate household expenses, she cannot be said to have knowingly participated in a fraudulent scheme. Drawing all reasonable inferences in favor of Mrs. Newhouse, *see Morales,* 249 F.3d at 121, there is a genuine issue of material fact as to whether she received the transfers from Mademoiselle with actual intent to defraud creditors. We thus vacate the award of attorneys' fees and remand the case to the District Court for further findings specific to Mrs. Newhouse.

For the foregoing reasons, the judgment of the District Court is VACATED and the case REMANDED for further findings consistent with this order.